173 So.2d 531 (1965)
247 La. 649
STATE of Louisiana
v.
Robert James MARCHETTI.
No. 47484.
Supreme Court of Louisiana.
March 29, 1965.
*532 Smith, Waltzer, Jones & Peebles, Jack Peebles, New Orleans, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, John Volz, Asst. Dist. Attys., for appellee.
HAMLIN, Justice:
The defendant, Robert James Marchetti, was charged with and convicted of the crime of armed robbery;[1] he was sentenced to serve fifteen years at hard labor in the Louisiana State Penitentiary. He appeals to this Court from his conviction and sentence, presenting for our consideration Bill of Exceptions No. 3, which was reserved to the trial court's overruling his motion for a new trial.
The defendant was jointly charged with Alex Carineo and Leonard Flanagan by bill of information with the crime of armed robbery. Carineo and Flanagan withdrew pleas of not guilty previously entered and then entered pleas of guilty as charged; they were sentenced to serve terms of ten and fifteen years, respectively, at hard labor in the State Penitentiary. Marchetti proceeded to trial, and the present conviction ensued.
The facts of record connected with the instant bill reflect that Detective Meyers of the New Orleans Police Force instructed Officer Fred Williams and Detective Brugier to be on the lookout for a 1960 Pontiac, bearing an Illinois license, and its owner, Leonard Flanagan, who was being sought in connection with an investigation being conducted through a prior arrest of said Flanagan.
On November 9, 1963, between 2:00 and 2:15 A.M., the car was spotted by said officers in the 200 block of Bourbon Street in the heart of the New Orleans French Quarter. They had also determined that Flanagan, the owner, had quarters in a hotel located near his parked car; his landlady had cooperated with the officers in their attempt to locate him to the extent of removing the doorknob from his door. About fifteen or twenty minutes after Flanagan's car had been placed under surveillance, Marchetti approached the automobile; he unlocked the trunk of the automobile and removed something from inside the trunk which he placed inside his coat pocket.
The evidence is clear that the officers thought that Marchetti was Flanagan; they approached him and questioned him, and he identified himself as Marchetti; when asked whether he knew where Flanagan could be located, Marchetti said that he did not know him. The officers, still thinking that Marchetti was Flanagan, asked him what he was doing going into the trunk of the automobile; they did not believe his reply that he had been given $20.00 by another person to remove the clothes from a hotel room in the 200 block of Bourbon Street and put them in the automobile and then put the keys in the car and leave. The record before us does not disclose whether Marchetti did or did not have clothing in his possession.
After a very short time, Marchetti was arrested. He was brought around the corner and placed in the officers' parked car; a district car, summoned by police radio, took *533 him to the police station. A relief team arrived to continue the surveillance of the Flanagan vehicle, and the arresting officers proceeded to the police station to question Marchetti. Marchetti's identity had become a little dubious; he was booked under his own name with a violation of LSA-R.S. 14:107,[2] investigation of armed robbery. In point of time, this was some forty-five minutes or an hour after arrest. Officer Williams testified:
"We asked him again as to any knowledge he had of where Flanagan could be located and he said, `Well, I just as soon get it off my chest,' he said, `It's been bothering me anyway,' he said, "I know Flanagan; we were in the penitentiary together in Illinois and I met him down here in New Orleans on Bourbon Street about three weeks ago and a few nights ago, a few days ago, we robbed a bar on the other side of Canal Street in the commercial area.' We asked him to clarify this and he said that himself, Flanagan and another boy, which at this time he didn't identify, went into the bar, this bar on the other side of Canal Street in the commercial area, and when he walked in, they sat at the bar; he ordered a beer, went to the rest room in the back, when he came back, he sat down. Flanagan told him to close the door. He got up, closed the door. When he turned around and was walking back, he noticed Flanagan and this other subject holding guns on the barmaid and about this time a colored porter was walking from the rear and there was a comment made as to `Get in the back' and he walked in the back with the porter and this other subject and the porter and the barmaid were put into a storeroom. They walked out and when they were coming back, Flanagan washe saw Flanagan behind the bar and shortly thereafter they walked out. Flanagan and this other subject got into the automobile and he walked in another direction."[3]
Subsequent to the above questioning, the booking of the defendant was changed to Armed Robbery of the Bon Soir Bar (the bill of information charges robbery of Lillyan Ferrara); the instant prosecution concerns that crime.
The trial judge decided affirmatively that defendant's arrest was valid, and that the confession and/or statement and/or admission was free and voluntary and was admissible in evidence; it was admitted in evidence over the objection of counsel for the defendant. Bill of Exceptions No. 3 (although other bills had been taken and withdrawn), concerning the ruling of the trial *534 judge, was perfected in connection with the overruling of the motion for a new trial. Bill of Exceptions No. 3 avers in part:
"* * * subsequent to the conviction of the defendant, he filed a Motion for a New Trial. Part II of said Motion argued on March 13, 1964, and the overruling by the Court of this part of the motion, forms the basis for this Bill of Exception:
"That at the hearing on the Motion for a New Trial, counsel for the defendant attempted to show:
"1. That in the early morning of Saturday, November 9, 1963, Officers Williams and Brugier were in the French Quarter looking for a 1960 Pontiac with Illinois license plates, allegedly the property of Leonard Flanagan who was being sought by the police;
"2. That the Officers observed the defendant go to this vehicle, open the trunk and remove something;
"3. That the defendant was then confronted by the Officers and restrained from his liberty, and was thereby arrested;
"4. That Officer Williams testified that he arrested the defendant for violating a Section of Louisiana Revised Statutes 14:107 (Vagrancy) while the record discloses no factual basis for that arrest;
"5. That there was therefore no probable cause for the arrest required by Louisiana Law and by the Constitution of the United States;
"6. That the police were not looking for this defendant and had not at the time of arrest wanted this defendant for anything, and had no probable cause to believe that a crime had been committed; and that defendant had committed it. (Officer Williams testified, in effect, that there was no basis for the arrest other than suspicion on his part);
"7. That in addition to arresting this defendant without proper cause, the arresting Officers failed to take this defendant before a committing magistrate without delay, as required by Louisiana Law;
"8. That defendant's right to prompt production before a magistrate did not lapse for failure to request such production, for as a layman defendant had no knowledge of this right and defendant had not been apprised of his right to counsel;
"9. That therefore, counsel for the defendant then and there objected, for the reason, it is maintained, that the Court admitted testimony containing evidence obtained by the police subsequent and incident to this unlawful arrest, and thereby deprived defendant of due process of law in contravention of the Fourteenth Amendment to the Constitution of the United States and the laws of the State of Louisiana. Specifically this evidence includes all oral and written statements made by the defendant, as well as any and all identifications made by defendant subsequent and incident to his arrest."
Counsel for the defendant argues in this Court that defendant was arrested without probable cause, and his confession and/or admission against interest was the fruit of that unlawful arrest and should not have been admitted in evidence; he urges that the defendant was prejudiced by such admission.
LSA-R.S. 15:60 provides that any peace officer may, without a warrant, arrest a person:
"(1) For the commission of any felony or misdemeanor committed in his presence;

*535 "(2) When such person has committed a felony although not in the presence of the officer;
"(3) When a felony in fact has been committed and he has reasonable cause to believe that such person has committed it;
"(4) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it;
"(5) When he has received positive information by written, telegraphic or other authoritative source that another officer holds a warrant for such arrest." Defendant having challenged the constitutional validity of his arrest, it is our function to determine whether the facts available to the arresting officers at the moment of the arrest would have warranted a man of reasonable caution to believe that an offense had been committed. Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. Likewise, "It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion, see Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134, though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable causeevidence which would `warrant a man of reasonable caution in the belief" that a felony has been committed, Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543must be measured by the facts of the particular case. * * *" Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. See State v. Pickens, 245 La. 680, 160 So.2d 577.
Herein, as stated supra, the investigating officers were instructed to look for Flanagan in connection with a prior arrest. Certainly they thought that a felony had been committed. They knew only what Detective Meyers had told them; they did not have a picture of Flanagan; his physical description was sketchythin face, sharp features, long, dark hair, slightly greying at the temples. When the officers saw Marchetti unlock the trunk of Flanagan's car and act in the way he did, they believed, as a reasonable man would have believed, that he was the owner of the car.
Officer Williams testified that at the time Marchetti told the officers that he was to have removed clothes from a hotel room and placed them in Flanagan's car, the story sounded "phony"; it is to be noted that at the time the story was given, the officers thought that Marchetti was Flanagan, and they had been instructed that Flanagan was wanted. We are constrained to find that any reasonable man would have doubted the story. Flanagan's car was a movable, and Marchetti was exercising some control over it; it follows that a reasonable man would have thought that Marchetti was Flanagan or that he was a person associated or friendly with Flanagan. Such thinking would lead to the conclusion that the person knew of the whereabouts of the wanted person. Such thinking would be more than suspicion.
We conclude that under the above facts and circumstances, the arresting officers had probable cause for arresting Marchetti. We find that under Louisiana law, which controls in determining the validity of the arrest, State v. Green, 244 La. 80, 150 So.2d 571, Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, Cf. 24 La.L.Rev. 326, defendant's arrest was valid. The subsequent booking under LSA-R.S. 14:107 was also valid under the facts and circumstances surrounding the arrest. We do not find the facts and circumstances surrounding the arrests of the defendants in the case of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, apposite to the instant arrest. We conclude that defendant suffered no deprivation of his constitutional rights by reason of his valid arrest.
*536 As stated supra, the defendant while under arrest and booked under LSA-R.S. 14:107 gave the incriminating statement, supra, which he contends is inadmissible in evidence. Having found that defendant's arrest was with probable cause and valid, it follows that said statement was neither the fruit nor the result of an illegal arrest. We have only to determine whether the statement, admission, or confession was voluntary under LSA-R.S. 15:451. No contention has been made that the defendant spoke under force, promises, duress, or fear. Officer Williams testified that the defendant said, "Well, I just as soon get it off my chest." Under the facts and circumstances as reflected by the evidence attached to the instant bill, we conclude that the incriminating statement was voluntarily given and was an act of the defendant's free will. Cf. State v. Torris, 138 La. 460, 70 So. 475; State v. Berry, 50 La.Ann. 1309, 24 So. 329; State v. Lewis, 39 La.Ann. 1110, 3 So. 343.
Counsel for the defendant further argues in this Court that the failure of the arresting officers to take defendant-appellant before a committing magistrate constituted a denial of due process, and that the confession and/or admission against interest should not have been admitted as evidence. He contends that it was the result of failure on the part of the arresting officers to abide by LSA-R.S. 15:80, which recites:
"When any person shall have been arrested without a warrant, the peace officer, after he shall have caused him to be booked, shall bring him, without unnecessary delay, if the charge be such as to entitle the accused to a preliminary examination, before the judge having authority to sit as a committing magistrate in the case, otherwise, before the judge having trial jurisdiction thereof."[4]
The facts of record, as stated supra, do not reflect that the defendant after arrest, before booking or after booking, requested a preliminary hearing; neither do the facts reflect that the State requested a preliminary hearing. At that time these rights were afforded to both the defendant and the State, if desired, by LSA-R.S. 15:154, which provides:
"Either the state or the defendant shall have the right to demand a preliminary examination; provided that after an indictment found or an information filed, it shall be wholly within the discretion of the district court, and not subject to review by any other court, to order or to refuse to order a preliminary examination; nor shall such examination be held in any case in which the offense charged is within the trial jurisdiction of any city or municipal court."[5]
The first time defendant urged that he was entitled to a preliminary hearing, however, was in his motion for a new trial. Under our Louisiana jurisprudence, as it has presently interpreted the law, the request for a preliminary examination was filed too late.
"* * * The object of preliminary examination is twofold:
"(1) To inquire touching the commission of crime, and the accused's connection with it;
"(2) to perpetuate testimony. The state has an interest in both. * *" *537 State ex rel. Guion, Atty. Gen. v. Brunot, Judge, 104 La. 237, 28 So. 996. Cf. State v. Longino, 191 La. 714, 186 So. 79.
"* * * We know of no statute that provides for such an examination after an indictment or information has been filed. In the case at bar, the accused represents that she cannot give bail in any sum, but is innocent, and desires an examination for the purpose of proving that she is not guilty of the offense charged in the information.
"The question of the guilt or innocence of the accused will come up in regular order and in due season on the trial of the information. The accused is not entitled to a preliminary trial of this question at this stage of the proceedings." State v. Mates, 133 La. 714, 63 So. 294. See, State v. Werner, 126 La. 1064, 53 So. 321; State v. Fritz, 126 La. 1066, 53 So. 321; State v. Werner, 128 La. 1, 54 So. 402.
"There is nothing in the record on the subject of the preliminary examination. But, after having pleaded to the indictment and having been tried and convicted, it was too late for the defendant to assert his right to a preliminary examination. State v. Caulfield, 23 La.Ann. 148." State v. LeBlanc, 116 La. 822, 41 So. 105. See, State v. Leming, 217 La. 257, 46 So.2d 262.
Herein, after the filing of a bill of information and after defendant's conviction, his counsel asserted that defendant's constitutional rights had been violated. Relying on McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, he now urges in brief that a preliminary hearing (which he admits is procedural) was mandatory. Because no hearing was held, counsel contends that the instant incriminating statement is invalid; he states:
"* * * In 1943 the United States Supreme Court in McNabb v. United States, * * * drew upon its supervisory authority over the administration of Federal criminal justice to inaugurate an exclusionary practice requiring the exclusion of any confession `made during illegal detention due to failure promptly to carry a prisoner before a Committing Magistrate, whether or not the confession is the result of torture, physical or psychological * * *.' * * *
"* * *
"It is submitted that our Legislature intended to do with LSA-R.S. 15:80 what the U. S. Supreme Court did with the McNabb rule. Unless this interpretation is accepted by this Court there is no question but that this statute will not be worth the paper it is written on."
In the McNabb Case, supra, decided in 1943, with Mr. Justice Frankfurter delivering the opinion, the United States Supreme Court found that the confessions of some of the defendants were illegally elicited. It held that under certain federal laws, it was mandatory that a preliminary examination be held; it did not hold that such procedure was mandatory for the several states under the Fourteenth Amendment to the United States Constitution.[6] Cf. United *538 States ex rel. Rine v. Boles, D.C., 206 F. Supp. 380, Cert. denied, 371 U.S. 868, 83 S.Ct. 130, 9 L.Ed.2d 104.
In 1944, the United States Supreme Court, with Mr. Justice Frankfurter again the organ of the Court, decided United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; involved was the admissibility of Mitchell's oral confession. The Federal Court of Appeal, relying on the McNabb Case, supra, held that the confession was barred. The United States Supreme Court held that under the circumstances of the case the confession was admissible; it stated:
"* * * Within a few minutes of his arrival at the police station, Mitchell admitted guilt, told the officers of various items of stolen property to be found in his home and consented to their going to his home to recover the property. It is these admissions and that property which supported the convictions, and which were deemed by the court below to have been inadmissible. Obviously the circumstances of disclosure by Mitchell are wholly different from those which brought about the disclosures by the McNabbs. Here there was no disclosure induced by illegal detention, no evidence was obtained in violation of any legal rights, but instead the consent to a search of his home, the prompt acknowledgment by an accused of his guilt, and the subsequent rueing apparently of such spontaneous cooperation and concession of guilt.
"But the circumstances of legality attending the making of these oral statements are nullified, it is suggested, by what followed. For not until eight days after the statements were made was Mitchell arraigned before a committing magistrate. Undoubtedly his detention during this period was illegal. * * * Illegality is illegality, and officers of the law should deem themselves special guardians of the law. But in any event, the illegality of Mitchell's detention does not retroactively change the circumstances under which he made the disclosures. These we have seen, were not elicited through illegality. Their admission, therefore, would not be use by the Government of the fruits of wrongdoing by its officers. Being relevant, they could be excluded only as a punitive measure against unrelated wrongdoing by the police. Our duty in shaping rules of evidence relates to the propriety of admitting evidence. This power is not to be used as an indirect mode of disciplining misconduct." Cf. Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; State of Louisiana ex rel. Byrnes v. Walker, D.C., 217 *539 F.Supp. 168; Lem Woon v. State of Oregon, 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340.
Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037, was decided by the United States Supreme Court in 1961, with Mr. Justice Frankfurter again the organ of the Court. The Court held that the confessions involved were not given voluntarily, and that their use deprived defendant of due process of law; it made the following pertinent statement:
"The McNabb case was an innovation which derived from our concern and responsibility for fair modes of criminal proceeding in the federal courts. The States, in the large, have not adopted a similar exclusionary principle. And although we adhere unreservedly to McNabb for federal criminal cases, we have not extended its rule to state prosecutions as a requirement of the Fourteenth Amendment. * * *
"* * * It is impossible for this Court, in enforcing the Fourteenth Amendment, to attempt precisely to delimit, or to surround with specific, allinclusive restrictions, the power of interrogation allowed to state law enforcement officers in obtaining confessions. * * *
"* * * The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. * * *"
In his scholarly per curiam to Bill of Exceptions No. 3, which has been of tremendous help in our determinations, the learned trial judge in the instant case concluded that in the light of the above jurisprudence the defendant herein has not been deprived of any of his constitutional rights by reason of his failure to have a preliminary hearing; he concluded that defendant's incriminating statement was admissible in evidence. We agree with his conclusions.
Bill of Exceptions No. 3 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] "A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

"B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five and not more than thirty years, without benefit of parole, probation or suspension of sentence, except as provided in R.S. 15:574.3(G)." LSA-R.S. 14:64.
[2] "The following persons are and shall be guilty of vagrancy:

"(1) Habitual drunkards; or
"(2) Persons who live in houses of ill fame or who habitually associate with prostitutes; or
"(3) Able-bodied persons who beg or solicit alms, provided that this article shall not apply to persons soliciting alms for bona fide religious, charitable or eleemosynary organizations with the authorization thereof; or
"(4) Habitual gamblers or persons who for the most part maintain themselves by gambling; or
"(5) Able-bodied persons without lawful means of support who do not seek employment and take employment when it is available to them; or
"(6) Able-bodied persons of the age of majority who obtain their support gratis from persons receiving old age pensions or from persons receiving welfare assistance from the state; or
"(7) Persons who loaf the streets habitually or who frequent the streets habitually at late or unusual hours of the night, or who loiter around any public place of assembly, without lawful business or reasons to be present; or
"(8) Persons found in or near any structure, movable, vessel, or private grounds, without being able to account for their lawful presence therein; or
"(9) Prostitutes
"Whoever commits the crime of vagrancy shall be fined not more than two hundred dollars, or imprisoned for not more than nine months, or both."
[3] Marchetti's testimony given on direct and indirect examination was similar.
[4] LSA-R.S. 15:81 further provides:"As soon as the person arrested without a warrant shall have been brought before the judge, the judge shall, unless an affidavit be then made setting forth the charge against the prisoner, order him forthwith to be discharged from custody."
[5] LSA-R.S. 15:153 provides:"The following named officers, throughout their several territorial jurisdictions, shall have jurisdiction as committing magistrates, with authority to bail or discharge; the judges of the district courts in all criminal cases; the judges of the several city and municipal courts, in all cases not capital; the justices of the peace, in all cases not capital or necessarily punishable at hard labor."
[6] "Quite apart from the Constitution, therefore, we are constrained to hold that the evidence elicited from the petitioners in the circumstances disclosed here must be excluded. For in their treatment of the petitioners the arresting officers assumed functions which Congress has explicitly denied them. They subjected the accused to the pressures of a procedure which is wholly incompatible with the vital but very restricted duties of the investigating and arresting officers of the Government and which tends to undermine the integrity of the criminal proceeding. Congress has explicitly commanded that `It shall be the duty of the marshal, his deputy, or other officer, who may arrest a person charged with any crime or offense, to take the defendant before the nearest United States commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial * * *'. 18 U.S.C. § 595, 18 U.S.C.A. § 595. Similarly, the Act of June 18, 1934, c. 595, 48 Stat. 1008, 5 U.S.C. § 300a, 5 U.S.C.A. § 300a, authorizing officers of the Federal Bureau of Investigation to make arrests, requires that `the person arrested shall be immediately taken before a committing officer.' * * * Similar legislation, requiring that arrested persons be promptly taken before a committing authority, appears on the statute books of nearly all the states.

"The purpose of this impressively pervasive requirement of criminal procedure is plain. A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. * * * Legislation such as this, requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguardnot only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. * * * A statute carrying such purposes is expressive of a general legislative policy to which courts should not be heedless when appropriate situations call for its application." McNabb v. United States, supra.