FOURNET, Chief Justice.
 

 The defendant, Kenneth Plaisance, having been convicted and sentenced to imprisonment in the Louisiana State Penitentiary at hard labor for the balance of his natural life on an indictment charging him with aggravated rape prosecutes this appeal, relying for the reversal thereof on six errors allegedly committed during the course of the trial to which objections were made and bills of exception timely made and perfected.
 

 The first bill was reserved when the trial judge ruled the defendant, being able to understand the nature of the proceedings against him and assist counsel in his defense, was sane and, the second bill was reserved when the trial judge overruled the defendant’s application for a lunacy commission to inquire into defendant’s sanity at the time of the offense.
 

 In order that these two bills may be properly disposed of it will be necessary to go into some details regarding the facts of the case as disclosed by the record. It appears that on January 26, 1963 the accused, a twenty-three year old white man, broke into the home of Mrs. Jones, going first into the bedroom of her 14 year old son, whom he struck in the neck, but prior thereto the boy, having heard someone breaking into the house called to his mother who was sleeping in the adjoining room and she telephoned the police. Immediately thereafter the defendant broke down the door to Mrs. Jones’ room where she was with her 11 year old daughter and he beat, robbed and raped Mrs. Jones. The police arrived as the accused was leaving the home and while scuffling with the officer in an attempt to escape defendant was shot. On February 14, 1963 the grand jury returned an indictment against Plaisance charging him with
 
 *217
 
 aggravated rape. On July 1, 1963
 
 [1]
 
 the court, upon finding that the accused was unable to understand the nature of the proceedings against him and assist counsel in his defense, committed him to East Louisiana State Hospital. Subsequently, authorities of the hospital notified the trial judge that the accused was legally sane and he was returned to the parish prison whereupon the trial judge in compliance with R. S. 15:267 ordered another lunacy commission comprised of the same physicians appointed to the first to inquire into his present mental condition. On the 28th of September, 1964 the doctors again reported at the hearing held by the court that Plaisance was not capable of understanding the nature of the proceedings against him and would be unable to assist in his defense and was accordingly recommitted to the hospital. The hospital authorities in June, 1965 notified the trial judge again that the accused was sufficently recovered to stand trial and by continued use of the proper medication would remain in that condition, whereupon the trial judge ordered a third lunacy commission composed of the same doctors as previously appointed. After full hearing on March 4, 1966 the court concluded the defendant was sane and able to stand trial which was fixed for March 28, 1966. At the hearing counsel, who had in the meantime been employed by the defendant, objected to the ruling and reserved the first bill of exception. The next bill was reserved when the trial judge overruled defense counsel’s application for appointment of a lunacy commission to inquire into defendant’s sanity at the time of the offense. On the day set for trial defendant was re-arraigned, plead not guilty and not guilty by reason of insanity.
 

 The basis for the first bill of exception is that “the evidence produced at this lunacy hearing was to the effect that the defendant, although at the time sane and able to assist in his defense, was still under sedation prescribed by physicians, and if it were not for the said sedatives defendant would not have been legally sane and able to stand trial”, and, “further, that at the time of said hearing and at the time of trial defendant was being administered sedation and was under the influence of drugs, being in a state of remission due only to the influence of said drugs.” Counsel, orally and in brief, sets forth, as an additional basis in support of the argument that defendant should not be tried while in a state of remission, the contention that if found .not guilty the defendant’s release would be a constant menace to society.
 

 
 *219
 
 We think the argument thus posed by counsel has been adversely disposed of by this court in State v. Swails, 223 La. 751, 66 So.2d 796, wherein this court observed, “The apprehension and even the predictions of some physicians that appellant may be a menace to society, if he is ever released, affords no basis whatever for holding him presently insane, within the meaning of the law,” pointing out further, “The statute is founded on the cardinal and humane concept that no person shall be tried for the commission of a crime when he is mentally incapable of understanding the proceeding against him and of making an intelligent defense. Protection of the public from possible harm from the accused is not envisioned by the law.” See also, State v. Estes, 212 La. 694, 33 So.2d 199.
 

 On the merits of the bill we find the tmcontradicted testimony of Drs. Sanchez and Chetta unequivocally establish that defendant is presently sane for he is able to understand the proceedings against him and assist in his defense being in a state of complete remission and will remain such by continued use of the prescribed medication. Dr. Sanchez testified even if the tranquilizer was temporarily discontinued he would not lapse into his prior state by the time of trial because of the medication in his system as well as resistance to stress and strain resulting from the past medication.
 

 We, therefore, conclude that the bill is without merit for as aptly observed by this court in State v. Chinn, 229 La. 984, 87 So.2d 315, “To warrant the sustaining of a plea of present insanity, thereby preventing the trial of a criminal action, it must appear by a preponderance of evidence that the accused is so mentally deficient that he lacks capacity to understand the nature and object of the proceedings against him and to assist in the conducting of his defense in a rational manner.”
 

 The next bill of exception is equally without merit. -From a perusal of the record it does not appear the trial judge has abused the discretion vested in him by R.S. 15 :268
 
 [2]
 
 in refusing the defendant’s motion to appoint physicians to inquire into his sanity at the time of the commission of the offense of which he is .charged. The trial judge in so ruling obviously felt from the information secured during the three prior lunacy hearings, another lunacy commission could serve no useful purpose and would merely serve to delay the trial of the case. The issue of in
 
 *221
 
 sanity at the time of the commission of the crime involves a fact affecting the guilt or innocence of the accused and necessarily one to be tried and submitted on the merits to the jury the same as all other facts in the case. State v. Eisenhardt, 185 La. 308, 169 So. 417; State v. Cook, 215 La. 163, 39 So.2d 898; State v. Basco, 216 La. 365, 43 So.2d 761; State v. Chinn, supra.
 

 Counsel’s argument that because of his pecuniary circumstances he was deprived of expert testimony is belied by the record as the record reflects he was able to employ counsel to defend him and called Dr. Jack Chappuis, a psychiatrist of his choice who testified during the trial of the case. Moreover, he could have secured the testimony of the doctors from the East Louisiana State and Charity Hospitals who had treated him by simply asking that they be subpoenaed.
 

 The next two bills were reserved to the trial judge’s ruling declining certain special charges submitted by counsel — first, when he called attention to the judge that he had not included in his general charge “on the law of insanity as pertaining to the Durham Rule,” and the trial judge refused to so charge the jury; and second, when the trial judge refused to give the following special charge; “Any person charged with an offense for which the penalty is or may be capital punishment who, upon trial, if found not guilty by reason of insanity or mental defect shall be committed by the judge to a state mental institution. No person so committed shall be released from the state mental institution except upon the order of the same court which ordered his commitment based upon a determination that such person no longer is criminally insane or a menace to society.”
 

 We find no merit to either of these bills. The trial judge under the express provisions of the Code of Criminal Procedure must charge the jury with the applicable law of the case,
 
 [3]
 
 i. e., “If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.” R.S. 14:14. Counsel for defendant’s contention that this law is outmoded and archaic and should be changed to the test of legal sanity prevailing in other jurisdictions referred to as the Durham Rule or that of irresistible impulse, is a matter that addresses itself to the legislature. State v. Jenkins, 236 La. 256, 107 So.2d 632; State v. Bickham, 239 La. 1094, 121 So.2d 207.
 

 The identical special charge as that forming the basis of the latter bill un
 
 *223
 
 der consideration was presented to this court in State v. Swails, 226 La. 444,
 
 76
 
 So.2d 523, in which certiorari was denied, 348 U.S. 983, 75 S.Ct. 574, 99 L.Ed. 765, wherein it was observed that the special charge was properly refused inasmuch as “they were not pertinent because the disposition of the appellant following a verdict of not guilty was not an issue in the case and they were not wholly correct because counsel did not include in the requested charges certain cognate provisions of the mental health law, to wit: R.S. 28:56, 28:-98 and 28:171.” See also, State v. Rideau, 242 La. 431, 137 So.2d 283.
 

 Following conviction defendant dismissed the attorney he had employed for trial of the case and another was appointed by the court who filed a motion for a new trial specifying the grounds alleged in the bills of exception above disposed of and that said verdict was contrary to the law and evidence. The denial of the motion by the trial judge forms the basis for the next bill reserved which presents nothing new for our consideration, as all questions of law properly raised have been disposed of, and this court is without appellate jurisdiction as to questions of facts affecting the guilt or innocence of the accused. Art. 7, Sec.. 10, La.Const.
 

 Another bill of exception was reserved when the trial judge overruled the independent motion for a new trial
 
 [4]
 
 filed by the defendant in his own handwriting, containing 17 alleged errors committed during the course of the trial although no timely objections had been made thereto at the time or properly perfected by reservations of bills of exception, claiming in part that his trial attorney was incompetent and ineffective in that he told the jury that his client was guilty and failed to object to various prejudicial remarks made by the prosecuting attorney in final argument to the jury; namely, allegedly that the prosecutor described Plaisance as a skilled burglar, that if defendant were acquitted he would be sent to a state hospital “where he would take a couple of pills and then would be turned loose to commit the same crime”, and the reference to the fact that Plaisance “had charges pending in other court sections”, and the trial judge committed various prejudicial errors in instructions and remarks to the jury.
 

 This bill is clearly without merit. Notwithstanding the fact that the alleged errors contained in defendant’s independent motion for a new trial were not objected to during the course of the trial nor bills of exception reserved as required by
 
 *225
 
 the Code of Criminal Procedure,
 
 [5]
 
 nor was an objection urged by the state, a hearing was held on the motion before Judge Braniff
 
 [6]
 
 during which the trial judge and Rudolph Becker, the trial attorney, testified categorically denying all recited allegations of misconduct on their part.
 

 Counsel’s argument that the fact that the court reporter did not record the closing argument of the prosecuting attorney, thereby depriving defendant of an opportunity to establish his allegations of ineffectiveness on the part of his counsel,
 
 [7]
 
 merits no further consideration than to observe that we know of no law that requires the prosecuting attorney’s closing argument be taken down and transcribed by the court reporter save and except when such argument or part thereof is timely objected to and attached to a bill of exception reserved and perfected.
 
 [8]
 

 The final bill was reserved upon denial of defendant’s supplemental motion for a new trial filed in proper person wherein he alleged he was deprived of a fair trial by the systematic exclusion of daily wage earners from the jury. Although this objection had not been timely urged since raised only after conviction,
 
 [9]
 
 the trial judge, nevertheless, had a hearing on the matter. The sole witness offered to testify, Chairman of the Jury Commission for the Parish of Orleans, related that during the year in which Plaisance was tried notices were sent out to everyone without regard to occupation, including daily wage earners. While he also testified that any prospective juror who presented a letter from his employer showing he would not receive compensation while on jury duty had his name placed on an inactive list, whereas all those who did not
 
 *227
 
 make such a showing were called as drawn, we find no showing of discrimination. The accused in this case, a white man, has not only failed to show there was a systematic exclusion of daily wage earners, but has failed to show that if such a fact can be said to have existed how he was prejudiced thereby. As aptly pointed out in Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1616, 91 L.Ed. 2043, occupational discriminations are not presumptive constitutional violations as would be the case with regard to purposeful discrimination because of race or color, but there must be a clear showing that there was thereby a denial of a fair trial.
 

 For the reasons assigned the conviction and sentence are affirmed.
 

 [1]
 

 . Pursuant to a motion of counsel from the legal aid a lunacy commission was appointed composed of Drs. Sanchez and' Ghetta to incluiré into defendant’s present mental condition and after a full hearing the trial judge concluded in conformity with the report of the commission that defendant y/as unable to understand the proceedings against him and to assist in his own defense.
 

 [2]
 

 . “Wlienever, on a prosecution by indictment or information, the existence of in-
 
 i
 
 sanity or mental defect on part of the defendant at the time of the alleged commission of the offense charged becomes an issue in the cause, the court may appoint one or more disinterested physicians not exceeding three to examine the defendant.”
 

 [3]
 

 . See, R..S. 15:385, State v. Tucker, 38 La. Ann. 536; State v. Scruggs, 165 La. 842, 116 So. 206; State v. Sercovich, 246 La. 503, 165 So.2d 301.
 

 [4]
 

 . In support of tliis motion defendant filed in proper person a brief in his own handwriting which we think clearly reflects that at the time of and following the trial of Ms ease, he thoroughly understood the nature of the action against Mm and was well able to assist counsel in his defense.
 

 [5]
 

 . Art. 841 provides, “An irregularity or error in the proceedings cannot be availed of after verdict unless it is objected to at tlie time of its occurrence and a bill of exception is reserved to the adverse ruling of the court on such objection. Failure to reserve a bill of exception at the time of an adverse ruling of the court operates as a waiver of tlie objection and as an acquiescence in tlie irregularity or ruling. * * * ”
 

 [6]
 

 . The trial judge, Judge O’Hara, was on leave of absence and Judge Braniff was sitting in the section at the time of the motion for new trial and presided at the bearing, and also signed the bills of exception.
 

 [7]
 

 . For an excellent dissertation on what constitutes ineffective counsel see Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787.
 

 [8]
 

 . Because of tlie seriousness of tlie accusations we deem it advisable to comment from our knowlege, counsel is an experienced criminal lawyer with 9 years experience, several of which as an assistant prosecutor, and from our appreciation of the record in this case we are satisfied that bis work was not only effective, but ably and competently performed.
 

 [9]
 

 . See footnote 5.