HAMLIN, Justice:
 

 Anthony Lee Pagnotta, Clarence T. Byrd, and Rudy Herrerra were jointly charged by bill of information with a violation of LSA-R.S. 14:60, in that they “committed Aggravated Burglary, in that they did, without authorization enter an inhabited dwelling and structure, to-wit: 3621 State Street Drive, where persons were present, to-wit: one CARL NAIHAUS and one ANNA NAIHAUS, with the intent to commit a theft therein, and did commit a battery upon one CARL NAIHAUS and one ANNA NAIHAUS while therein, * * ” Defendants Herrerra and Byrd plead guilty prior to trial and were removed as parties to the prosecution. Defendant Pagnotta plead not guilty, and trial continued as to him alone; he was found guilty and sentenced to serve twenty years in the Louisiana State Penitentiary; he appeals to. this Court from his conviction and sentence, presenting for our consideration nine bills of exceptions.
 

 The testimony made part of the bills of exceptions discloses that on the evening of January 6, 1966, at approximately 7:10 P.M., three masked men, one armed, entered the premises occupied by Mr. and Mrs. Carl Naihaus and. burglarized them of money, furs, and jewels of a substantial value. The burglars ordered the victims into the bathroom where they tied up their hands and legs and told them to remain there for a time.
 

 BILL OF EXCEPTIONS NO. 1 •
 

 Bill of Exceptions No. 1 (submitted without argument) was reserved when the trial judge overruled defendant’s motion for a new trial. The pertinent allegations of this motion are:
 

 “1.
 

 “LSA-R.S. 15:509. ‘Reasons for granting new trial. A new trial ought to be granted: * * * (1) Whenever, the verdict is contrary to the law and the evidence:’
 

 “And in support thereof mover urges the following grounds:
 

 “2.
 

 “That testimony was obtained from a witness, Mr. Latterier, that the defend
 
 *775
 
 ant was injured on the face, leaving a scar during his incarceration in the Parish Prison while awaiting trial of this matter. (April 13, 1966)
 

 “3.
 

 “That said scar on the face of the defendant was the identifying mark referred to by the victims in their identification of said defendant.
 

 “4.
 

 “That further proof is hereby offered which shows that the scar on the face of the defendant was a result of an injury in the Parish Prison in New Orleans, while he was awaiting trial on this case and that the victims were erroneous in using this mark for identification.
 

 “5.
 

 “Therefore, since the identification of the defendant was predicated on a non existing facial scar it seems incumbent upon the Court to grant this defendant a new trial since the identification was based upon fantasy rather than fact, and puts the veracity of the witnesses testimony in doubt.”
 

 It will be noted that the motion is devoid of allegations to the effect that there was no evidence or a complete lack of evidence to support the conviction. The motion addresses itself to questions of fact and the sufficiency of the evidence relating to the guilt or innocence of the defendant.
 

 In State v. Vale, 252 La. 1056, 215 So.2d 811, decided November 12, 1968, we held:
 

 "Although the appellate jurisdiction of this court is specifically limited by our constitution to questions of law alone, when it is asserted there is a total lack of evidence to support the conviction of the crime charged, or any element thereof, this raises a question of law that is subject to our review. In other words, this court lacks jurisdiction to decide a question of fact or the sufficiency of the evidence relating to the guilt or innocence of a party accused in a criminal prosecution; but, where there is some evidence, whether it be direct or circumstantial, to sustain the conviction, the Supreme Court cannot pass upon the sufficiency thereof, as that comes within the exclusive province of the jury. State v. Campbell, 173 La. 831, 138 So. 853; State v. Verret, 174 La. 1059, 142 So. 688; State v. Fountain, 175 La. 221, 143 So. 55; State v. Bonner, 193 La. 387, 190 So. 621; State v. Haddad, 221 La. 337, 59 So.2d 411; State v. Champagne, 251 La. 849, 206 So.2d 518.” See, also, State v. Plaisance, 252 La. 212, 210 So.2d 323; State v. Page, 251 La. 810, 200 So.2d 503.
 

 The record contains some evidence that defendant had a scar on his face at the time he was allegedly observed by the victim Mrs. Naihaus. The trial judge, in his per curiam, stated in part, “Further, I fail
 
 *777
 
 to see * * * how the identification made by the victim in the excitement of the robbery was invalid because of the allegation of the scar.” The record contains evidence hereinafter discussed, in addition to the evidence complained of, from which the jury could return the verdict it did.
 

 No error of law was committed. Bill of Exceptions No. 1 is without merit.
 

 BILL OF EXCEPTIONS NO. 2
 

 Bill of Exceptions No. 2 (submitted without argument) was reserved when the trial judge denied counsel for defendants Byrd and Herrerra the right to file a motion to suppress a confession.
 

 The following from the per curiam of the trial judge affirms the correctness of his ruling:
 

 “Frankly, the transcript shows that the motion was filed solely by the defendants Herrerra and Byrd through their counsel, Mr. Gill. And, the transcript further shows that when I denied Mr. Gill the right to file the Motion to Suppress the Confession, he alone reserved a Bill of Exceptions on behalf of his two clients. The motion had not been filed on behalf of Mr. Pagnotta, nor was any Bill of Exceptions taken by his counsel, since he was not a party to that pleading.
 

 (t
 
 >}{ ‡ ‡
 

 “However, for the record in this case, it disclosed that no inculpatory statement of the defendant Anthony Lee Pagnotta was ever introduced into evidence by the State and that, therefore, there being no confession or inculpatory statement of any kind either having been used, or having been intended to be used there was nothing before the Court to be considered to be suppressed.”
 

 Bill of Exceptions No. 2 is without merit.
 

 BILLS OF EXCEPTIONS NOS. 3, 4 and 5
 

 Bills of Exceptions Nos. 3, 4 and 5 (submitted without argument) were reserved at the hearing of the motion to suppress when the trial judge ruled that Patrolman James V. Miller did not have to reveal the name, address, and identity of his informant.
 

 We find no reason for a lengthy discussion of these bills. The trial judge’s per curiam to Bill of Exceptions No. 3, adopted for Bills Nos. 4 and 5, explains correctly the reasons for his ruling; it recites:
 

 “Bill of Exceptions No. 3 was taken to my refusal to permit one of the officers concerned with this case to reveal the name and address of his confidential informant. I did permit counsel to elicit from the witness questions about the reliability of the informant and in-so-far as his having furnished information
 
 *779
 
 which had lead in the past to arrests and convictions of other persons which the witness answered in the affirmative and that he had given him such information on numerous occasions.
 

 “This Court has held on occasions too numerous to mention that the defendant is not entitled in a situation such as this, the name of the informant. There was to [no] allegation here by the defendant through his counsel or through any testimony that the confidential informant had framed him or had planted the evidence in his apartment, or had done any other act which would require revealing his identity. Consequently, I refused to permit the witness to answer the question.” See, McCray v. State of Illinois, 386 U.S. 300,
 
 87
 
 S.Ct. 1056, 18 L.Ed.2d 62.
 

 . Bills of Exceptions Nos. 3, 4 and 5 are without merit.
 

 BILL OF EXCEPTIONS NO. 6
 

 Bill of Exceptions No. 6 (submitted without argument) was reserved when during the hearing of the motion to suppress the trial judge sustained the State’s objection to the following question propounded to Officer Ronald Ciravello: “Now, then, after they were arrested, do you know if they were ever taken before a committing magistrate ?”
 

 We find that the trial judge was correct in sustaining the State’s objection and quote the following from his per curiam:
 

 “I felt that whether they were taken before a Committing Magistrate was irrelevant on the Motion to Suppress. At the time there were no Committing Magistrates in the Parish of Orleans and further, that it was not shown by counsel by subsequent testimony what point the defendants hoped to prove by determining whether or not the defendants had been taken before a Committing Magistrate. Immediately after this question counsel Mr. Gill stated: No further
 

 questions of this officer. He did not attempt either to perfect his Bill by asking what he hoped to prove if the defendant had not been taken before a Committing Magistrate, or what rights had been violated. Since there was no confession in this case, the fact if conceded that the defendants were not taken before a Committing Magistrate, could not show that they had been deprived of any constitutional rights, since there were no confessions involved. The defendants were identified the very next morning in a line up.
 

 “The Court will also notice that this case occurred prior to the Federal Decision pertaining to show ups being held without presence of counsel. Despite that fact, there was no showing by which this testimony offered by the defendant that there was anything improper about the manner in which the line up was conducted, or that there was anything
 
 *781
 
 improper in the manner in which the defendant was identified. Any evidence seized from the defendant and his co-defendants was seized prior to any time when he could have been taken before a Committing Magistrate, since it occurred at the time of his arrest. The evidence shows that no other evidence was secured after the line up and that nothing was done thereafter which violated any Constitutional Rights of the defendant. And, even if he had been taken before a Committing Magistrate, his rights would not have been protected any better than they were in the instant case. Therefore, since there was no reason stated by counsel, as this Court has said it will require, for the answer to the question and since there was no attempt thereafter to show the purpose or what rights were violated, this Bill is improper and raises no valid legal point and the aforementioned facts belie any substantive merit to the Bill as taken.” See, State v. Marchetti, 247 La. 649, 173 So. 2d 531.
 

 Bill of Exceptions No. 6 is without merit.
 

 BILL OF EXCEPTIONS NO. 7
 

 Bill of Exceptions No. 7 (submitted without argument) was reserved to the trial court’s overruling a motion to suppress evidence filed on behalf of defendant and the other two men with whom he was jointly charged.
 

 The motion avers that the arrest of defendant was illegal and without justifiable cause, and that the evidence secured through search and seizure after the arrest is inadmissible because the search ■ and seizure conducted without a search warrant violated defendant’s constitutional rights.
 

 The State concedes that the arresting officers had no warrant of arrest or search; but, it contends that the arrest was legal and that the furs, jewelry, etc. found in the suitcase in the apartment in which Pagnotta was arrested were constitutionally seized by the arresting officers in a search incident to his arrest.
 

 Article 60 of the Code of Criminal Procedure, in effect at the time of defendant’s arrest (now Article 213 of LSA-C. Cr.P.), provided that a police officer had the authority to arrest a person without a warrant when he had reasonable cause to believe that the person he was arresting had' committed a felony. In determining whether the facts and circumstances within the officer’s knowledge constituted reasonable or probable cause to make an arrest without a warrant, this Court has said that they must be sufficient in themselves to justify a man of average caution to believe that a felony had been committed and the person being arrested had committed such felony. The proof required is not that required for a conviction. State v. Johnson, 249 La. 950, 192 So.2d 135; State v. Pebworth, 251 La.
 
 *783
 
 1063, 208 So.2d 530; State v. Vale, 252 La. 1056, 215 So.2d 811.
 

 In the instant case, the facts and circumstances surrounding defendant’s arrest and the search and seizure which followed are to the effect that Patrolman Miller received from the victims themselves a description of the three men who had burglarized them. Patrolman Miller said the description consisted of “three unknown white males. The number one white male was young; blond, curly hair and had a cyst or a large bump on his face. The other two white males were described as one of Italian or Spanish descent and the third was a white male, young; black, curly hair.” He testified that an informant told him that a subject called “Butch,” who had a bump on his face, frequented the French Quarter and was going out with a blond-headed girl employed by one of the strip places on Bourbon Street. Patrolman Miller said that a few hours later, as many as five, his informant phoned him to say that Butch and two other subjects were with the blond girl in her apartment over a night club on Bourbon Street, and that they were getting ready to leave town because the heat was on Bourbon Street; that he inquired if they were leaving immediately, and the informant replied that as far as he knew they were preparing to leave town. Patrolman Miller further stated that he knew the victims had been burglarized of furs, and that the informant stated that, “the subjects were in possession of three furs and that they were talking freely on the street about making this score, because it was all over the radio and television about that time of the morning [January 7, 1966] and I asked him if they had left town yet and he said no, he’d just seen them, they were going over to what they call a pad, their house, to take and grab their clothes and leave town.”
 

 Because of the shortness of time and the fear that the subjects would leave New Orleans, Patrolman Miller testified that he did not procure a search warrant and a warrant of arrest. He requested assistance from Lieutenant Foster and Officer Ciravello.
 

 The officers went to the described apartment, 412 Bourbon Street, and Patrolman Miller knocked at the door. The officers heard a terrific amount of noise and scrambling from within. After inquiring who was there and being told, “Police,” a female, Donna Ray Olsen, opened the door, and when questioned she responded that Butch was staying with her; upon being called, Butch, who apparently was Byrd, entered the living room and was immediately arrested by Patrolman Miller. The other two officers arrested Pagnotta, who was in a closet, and Herrerra, who was
 
 *785
 
 partially under the bed.
 
 [1]
 
 After the arrests, Patrolman Miller conducted a search and found a black suitcase which contained three furs with the initials of the victims, a watch, and rings. These are the items sought to be suppressed as evidence. Detective Ronald Ciravello, whose testimony on the motion to suppress affirmed that of Patrolman Miller, testified during trial that he saw what was inside the suitcase, and that it contained fur coats, a fur stole, a watch, and rings.
 

 The above facts, which were within Patrolman Miller’s knowledge and which were acquired by direct communication and information which Miller believed was reliable, were, in our opinion, sufficient to justify a reasonable and prudent man’s view that the persons arrested were the persons who had committed the felony. (It is to be noted that Byrd and Herrerra, who were arrested with Pagnotta, later plead guilty.) We believe that a man of average caution would have acted as the arresting officers did.
 

 We find that Patrolman Miller, assisted by Officers Foster and Ciravello, had probable and reasonable cause — a complete report of the burglary, a description of the burglars, and information from an informant trusted by Patrolman Miller — to arrest Herrerra, Byrd, and the defendant Pagnotta in Donna Ray Olsen’s apartment without a warrant of arrest. Substantiating our views are the facts that there was no forcible entry into Donna Ray Olsen’s apartment, LSA-R.S. 15:72 (now LSA-C.Cr.P. Art. 224), and that there was an attempt to conceal Pagnotta and Herrerra seen by Officer Ciravello. State v. Johnson, 249 La. 950, 192 So.2d 135. We conclude that the arrest was legal. State v. Aias, 243 La. 945, 946, 149 So.2d 400; State v. Marchetti, 247 La. 649, 173 So.2d 531; State v. Mc-Ilvaine, 247 La. 747, 174 So.2d 515.
 
 [2]
 

 Plaving concluded that the arrest of the defendant, as well as that of his two
 
 *787
 
 companions, was legal, we find that under the law, Amendment IV to the Constitution of the United States and Article I, Section 7, of the Louisiana Constitution of 1921, and the above facts, the search of Donna Ray Olsen’s apartment and the subsequent seizure, both immediately following the arrest, were legal and required no warrant. We further find that defendant’s constitutional rights were not violated. State v. Aias, supra; State v. Vale, 252 La. 1056, 215 So.2d 811. We conclude that the evidence was admissible and that the trial judge properly denied the motion to suppress.
 

 Bill of Exceptions No. 7 is without merit.
 

 BILL OF EXCEPTIONS NO. 8
 

 Bill of Exceptions No. 8 was reserved when the trial judge overruled defense counsel’s objection to certain testimony of Donna Ray Olsen, a witness for the State, in whose apartment Byrd, Herrerra, and defendant Pagnotta were arrested on January 7, 1966, supra.
 

 The witness was asked, “Was he [Pagnotta] in the apartment with you, Byrd and Herrerra?” She responded affirmatively and was then asked, “Now, this time before January 6, was there any discussion about anything in your presence?” She again responded affirmatively and was asked, “What was the discussion?” Counsel for the defendant objected to her answering the question on the ground that her testimony would be hearsay. The State argued that it was part of the res gestae. The trial judge overruled the objection, and the following testimony was adduced:
 

 “Q. Would you tell us what this discussion was ?
 

 “A. This discussion was about a house here in New Orleans that they were going to rob and get furs and jewelry and some money. They didnt know how they were going to do it. They were going to decide that when they got there. When it was supposed to take place, I have no idea, who it was or what time, what date.
 

 “Q. Now, I direct your attention to January 6, on the early morning hours of the 7th and ask you if you had occasion to be in your apartment on that day ?
 

 “A. Yes, sir.
 

 “Q. Now, where were you before you went to your apartment ?
 

 “A. I was working downstairs in the Chez Oui.
 

 “Q. When you went to your apartment, was anybody in your apartment when you got there?
 

 “A. Yes, sir.
 

 “Q. Who was there?
 

 “A. Tony, Rudy and Clarence.
 

 
 *789
 
 “Q. You said Tony, Rudy and Clarence?
 

 “A. Yes, sir.
 

 “Q. I’m going to show you what the State will mark S-7, for the purpose of identification and ask you if you have seen this suitcase before?
 

 “A. Yes, sir.
 

 “Q. Where did you see this suitcase before?
 

 “A. It was — first place I seen it was the Potato Head Restaurant, the same night Rudy had asked me if he could leave the suitcase at my apartment for awhile. I had assumed' that he was going to move out of his place he lived at, or was leaving town. He wanted some place to leave it and I said, ‘Of course, you can leave it there.’
 

 “Q. Was that suitcase in your apartment on January 6, or the early morning hours of January 7?
 

 “A. It had been there for a week before, he brought it, it was never moved, once he brought it.
 

 “Q. Miss Olsen, did you have occasion to know what was inside that suitcase when you returned to your apartment ?
 

 “A. No, sir.
 

 “Q.
 
 Did you see anything inside the suitcase ?
 

 “A. Well, I seen the contents of the suitcase approximately about 5:00 in the morning, the.night of Janu^ ary 6 or 7, early morning.
 

 “Q. What was in the suitcase ? ; ' ,
 

 “A. There was furs in the suitcase.
 

 “Q. Furs?
 

 “A. Yes, sir.”
 

 In brief filed in this Court, the State argues that if the testimony of Donna Ray Olsen was not admissible as part of tide res gestae, it was admissible as evidence of a similar act independent of the act charged in order to show guilty knowledge, intent, system, etc. LSA-R.S. 15:445, 15:446; State v. Evans, 249 La. 861, 192 So.2d 103; State v. Sharbino, 194 La. 709, 194 So. 756; State v. Hayden, 243 La. 793, 147 So.2d 392.
 

 In this Court, counsel for the defendant argues that the testimony given by Donna Ray Olsen regarding what the defendants allegedly said in her apartment two or three days prior to the actual burglary constituted hearsay and was not part of the res gestae, and that therefore it should not have been allowed. State v. Schmidt, 163 La. 512, 112 So. 400.
 

 We find that the testimony of Donna Ray Olsen was not hearsay It was relevant evidence which showed an intent to commit the instant offense while all parties involved were in the presence and hearing of
 
 *791
 
 one another. This finding is fortified by the later testimony of this witness with respect to events which took place in her apartment during the early morning hours of January 7, 1966, after she returned from buying a newspaper and other articles. Her testimony recites:
 

 “Q. Did you give anybody the newspaper when you got back ?
 

 “A. Yes, I did. I gave Clarence the newspaper.
 

 “Q. What happened, then?
 

 “A. He proceeded to read the newspaper and then he put the battery in the radio and turned the radio on and he woke up, I believe, Rudy first and showed him the newspaper and woke up Tony and showed him the newspaper.
 

 “Q. Did he make any comments about the items in the newspaper?
 

 “A.
 
 Yes, he read certain articles. I told him, I said, ‘What’s in the newspaper?’ He said, ‘I’m sorry, you can’t read the newspaper tonight.’ I said, ‘Why not?’ He said, ‘Just because you can’t,’ I said, ‘Well, I want to see the newspaper.’ So, he showed me the newspaper and a certain article and I said, ‘What about the article?’ And he said, ‘We did it.’
 

 “Q. He said,‘We did it?’
 

 “A. Yes, sir.
 

 “Q. What article did you look at?
 

 “A. The article reading that house in New Orleans that was robbed of $16,500.” (Submitted in evidence is the newspaper of January 7, 1966, which reports the burglary of the Naihaus residence.)
 

 We find that the testimony of Donna Ray Olsen was admissible in evidence. The trial judge correctly stated in his per curiam, “The objection on the grounds of hearsay, in my opinion, was not applicable and I felt that the evidence was very relevant and admissible and bore on the defendant’s guilt in the matter.”
 

 Bill of Exceptions No. 8 is without merit.
 

 BILL OF EXCEPTIONS NO. 9
 

 Bill of Exceptions No. 9 was reserved to the trial judge’s overruling of a motion for a new trial, a supplemental motion for a new trial, and a motion to recuse the trial judge.
 

 In Bill of Exceptions No. 1, supra, we have found that the trial judge was correct in overruling the motion for a new trial. No further discussion is necessary.
 

 The motion to recuse averred: “This Motion is made upon the grounds that; (1) the trial judge has an interest in said cause of action in that said judge has been cited by defendant in Supplemen
 
 *793
 
 tal Motion for New Trial as not having fully protected defendant’s right to effective representation of counsel within the meaning of the Sixth Amendment to the United States Constitution by not seeing that Trial Counsel discharged his duties properly in the representation of defendant throughout the trial. (2) that the Trial Judge will be a material witness on the hearing for the Supplemental Motion for New Trial.”
 

 The record reflects that defendant was represented by Jerome M. Winsberg as counsel during trial. Mr. Winsberg was discharged at the end of trial, and present counsel, Milton P. Masinter, was employed. The supplemental motion for a new trial, however, was filed by the defendant in proper person. This motion avers that the defendant is entitled to a new trial because:
 

 1.Defendant was denied the assistance of counsel required and within the meaning of the Sixth Amendment to the United States Constitution which resulted in a denial of due process of law under the Fourteenth Amendment to the United States Constitution by the failure or neglect of his trial attorney to do the following:
 

 (a)Counsel failed to have himself disqualified because he lived within the same block and on the same street as the victims, knowing the victims personally, and belonging to the same clubs and fraternal organizations. These facts were withheld from defendant prior to trial.
 

 (b) Counsel failed to reserve bills of exceptions when they were required during trial.
 

 (c) Counsel refused to call a certain witness who could have supported the theory of mistaken identity.
 

 (d) Counsel refused to produce in evidence the results of a lie detector test.
 

 (e) Counsel failed to object to the introduction and admittance into evidence of a fifty dollar bill and jewelry; this evidence was not linked with the defendant, and no foundation was laid for its introduction.
 

 (f) Counsel failed to make a motion to renew motion to suppress evidence previously made by G. Wray Gill.
 

 2. Counsel should have made a motion to quash the indictment.
 

 3. Defendant demanded of his counsel that he be brought before a committing magistrate for a preliminary hearing. This was refused by counsel.
 

 4. Defendant was not afforded a fair and impartial trial by the -fact that his jury did not include women or. wage earners.
 

 5. The trial judge did not properly discharge his duties to defendant when
 
 *795
 
 the court failed to see that counsel adequately and effectively represented the defendant.
 

 We find no merit in this bill. We have read the testimony taken at the hearing of the motions, supra, and the per curiam of the trial judge (six pages in length, discussing and disposing of each point), and we find that the trial judge correctly overruled the motions. The trial judge ably and fairly tried this prosecution, and there was no reason for him to recuse himself.
 

 The record reflects that Jerome M. Wins-berg represented the defendant to the best of his ability and in the manner he thought proper to safeguard defendant’s rights. Cf. State v. Plaisance, 252 La. 212, 210 So.2d 323. The allegations in the supplemental motion for a new trial concerning Jerome M. Winsberg are without substance.
 

 Present counsel had difficulty-in securing the transcript, but the transcript was •filed in this Court and has been thoroughly considered. We find that present counsel 'has represented the defendant on this appeal in an able manner. Despite the fact •that he was unable to argue a number of bills of exceptions, we have passed upon them.'
 

 Bill of Exceptions No. 9 is without merit.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 [1]
 

 . On the hearing of the motion to suppress, Officer Ciravello testified : “Went up to the third floor, they had a front apartment with doors. Officer Miller knocked on one door, I was standing by the other door. After he knocked, somebody said, ‘Who’s there?’ He said, ‘Police.’ And at which time I heard a lot of scuffling in a room. They had a panel in the door with about a quarter inch crack. I looked to the side, I could see through the crack and I saw a white male being hidden, put in a closet by a white female and I saw another subject jumping, climbing underneath the bed.”
 

 [2]
 

 . The trial judge pertinently stated in his per curiam: “Good police work and common sense dictated that the officers arrest these people immediately, before those persons would have a chance to use the arms which they had used a few hours before to terrorize and rob the elderly couple on State Street. There was every probable cause to make an arrest of these three defendants, since all three fit the descriptions given by both the victims and by the confidential informant and consequently any evidence seized as a result of this arrest, in my opinion, was seized lawfully.”