(121 So. 744)

No. 29604.

## STATE v. LA ROCCA et al.

Jan. 28, 1929. Rehearing Denied March 25, 1929.

Charles C. Luzenberg, Sr., and James A. Lindsay, both of New Orleans, for appellants La Rocca and Bernard.

Emmet Alpha, of New Orleans, for appellant Martin.

Percy Saint, Atty. Gen., and Eugene Stanley, Dist. Atty., and Warren O. Coleman, Asst. Dist. Atty., both of New Orleans, for the State.

LAND, J. Defendants are jointly charged by information with the robbery, on the 23d day of July, 1928, of Le Breton Market Branch of the Canal Bank & Trust Company in the city of New Orleans of the sum of $4,-300.

After refusal by the trial judge of applications for severance of trial, defendants were tried by jury, found guilty as charged, and each was sentenced to the state penitentiary for a term of not less than four years and eight months and not more than fourteen years.

The record contains fourteen bills of exception. Five of these bills, reserved by the defendants La Rocca and Bernard are similar, and will be considered and disposed of in connection with each other.

Bills No. 1 (La Rocca and Bernard).

Defendants filed motions for severance of trial in order that they might have the benefit of the testimony of their codefendants. These motions were overruled and bills reserved. Before making the motions for severance, defendants were furnished by the district attorney with a written statement of what one Mitchell Porretto would testify to as a witness on behalf of the state, and typewritten copies of this statement were annexed in support of the motions. On the trial of the case, Porretto testified, in substance, as set forth in his written statement.

It appears from this statement that Porretto was present and heard the three de-

fendants conspire to rob the bank, and furnished his car to them for that purpose; that defendants agreed, in the presence of Porretto, that La Rocca should drive the car and that Bernard and Martin should enter the bank and commit the actual robbery; that defendants all returned in the car to Porretto's place of business, immediately after the robbery, with the money in their possession, and asked him to conceal them in the attic loft of his place of business, and that Porretto did so.

As disclosed in the respective motions for severance, the defense of each of the defendants is that he is not guilty of the crime, and that Porretto's statement is false in every particular. On the trial, each defendant relied upon a separate and distinct alibi. At the hour the robbery was committed, La Rocca claimed that he was at Biloxi, Miss.; Bernard claimed that he was at Spanish Fort in the city of New Orleans; and Martin claimed that he was at another place.

■ It is manifest that the pleas of not guilty entered by defendants, and the three separate and distinct alibis relied upon by them, are not antagonistic defenses, entitling defendants to a severance *as a matter of right*.

In State v. Gresham et al., 132 La. 594, 595, 61 So. 681, it is said that: "Separate trials are not *matters of right* where parties are jointly indicted for crime, even though *a conspiracy* be alleged. The trial court is vested with judicial discretion in such matters, and the exercise of that discretion is not the subject of revision, except for abuse. 8 Cyc. 687; State v. Lee, 46 La. Ann. 623, 15 So. 159; State v. St. Paul, 110 La. 722, 34 So. 750; State v. Johnson, 119 La. [130] 856, 43 So. 981."

The granting of a severance of trial is a matter within the sound discretion of the trial judge, except when the evidence discloses that different defendants have *antagonis-*

*tic defenses*. And, where it is not shown that the defenses of the joint defendants *were antagonistic*, the plea for severance is properly overruled. State v. Havelin, 6 La. Ann. 167; State v. Jackson, 29 La. Ann. 354; State v. Johnson, 35 La. Ann. 842; State v. Desroche, 47 La. Ann. 651, 17 So. 209; State v. Taylor, 45 La. Ann. 605, 12 So. 927.

■ The contention in this case that defendants are entitled to a severance *as a matter of right*, upon the mere ground that, as joint defendants on trial at the same time, the one cannot be permitted to testify for the other, is without sound authority to support it.

Such contention is based upon State v. Smith, 156 La. 689, 101 So. 22. In that case, defendant excepted to the following instruction given by the court to the jury: "If a codefendant charged and tried together with his codefendant for the same alleged offense takes the stand as a witness, his testimony should be considered by the jury only as it relates to himself. The testimony of one codefendant should not be considered by the jury either against or in favor of the other codefendant."

In commenting upon this charge to the jury, the court said in the Smith Case: "Counsel in urging this ground for a new trial has evidently been misled by the case of State v. Lebleu, 137 La. 1007, 69 So. 808, which holds that the jurisprudence founded upon the law as it stood prior to the adoption of Act 41 of 1904 was correct, but that the adoption of the act of 1904 authorized a party accused to testify in favor of a joint defendant. Act 157 of 1916 repeals Act 41 of 1904, and readopts, without material changes, the language of section 2 of Act 29 of 1886, as amended by Act 185 of 1902. Therefore the jurisprudence as it existed prior to the adoption of Act 41 of 1904 must be adhered to now, and the Lebleu Case, which merely interpreted an act that has since been re-

pealed, can have no application. The doctrine announced in State v. Sims, 106 La. 453, 31 So. 71, State v. Breaux, 104 La. 540, 29 So. 222, and State v. Angel, 52 La. Ann. 485, 27 So. 214, holds that, where two or more persons are charged in the same indictment and are tried at the same time, each one of them may be a witness in his own behalf, but he cannot be a witness on behalf of his codefendants. *The remedy is to ask for a severance.* The instruction excepted to was correct- and it is in accord with the jurisprudence of the state."

In State v. Angel, 52 La. Ann. 486, 27 So. 215, cited in the Smith Case, it is said:

"These parties were being tried together. *They might have asked a severance, and been separately tried.* Had this been done, the one might have called the other as a witness on his behalf. Rice, Ev. [Criminal] § 327; State v. Mason, 38 La. Ann. 476; State v. Hamilton, 35 La. Ann. 1043; State v. Russell, 33 La. Ann. 135; State v. Prudhomme, 25 La. Ann. 523.

"But the rule is different where, indicted as principals in the same bill, the accused went to trial at the same time.

"In such case the one co-defendant cannot make of the other a witness for himself."

Not one of the cases cited in the Angel Case holds that defendants on joint trial are entitled to a severance upon the mere asking for it.

The announcements in the Smith Case that "The remedy is to ask for a severance," and in the Angel Case that "These parties * * * might have asked a severance, and been separately tried," are merely loose and inaccurate expressions of the court, and are not in accord with the uniform jurisprudence of this state on the subject of severance of trials, if such expressions may be construed as granting a severance to joint defendants, *as a matter of right,* and merely on the

ground that one codefendant may desire, or is willing, to testify for another defendant then on trial.

As a matter of fact, no severance had been applied for in the lower court in the Smith Case or in the Angel Case, and the question as to the right of a defendant on joint trial to claim a severance was not before the court for decision in either case.

The general rule in this state—that the testimony of a codefendant may not be received for or against a defendant on joint trial—is founded in a wise public policy, the purpose of which is to prevent perjury in such cases, either in behalf of or against a codefendant, and is adopted also for the protection of the codefendant himself. It is only where the defenses are antagonistic that the general rule is relaxed and severance of trial is permitted.

Even in cases where a severance has not been asked for, or has been refused, each codefendant is protected against the adverse testimony of his codefendant, under the charge of the court to the jury not to consider such testimony. State v. Sims, 106 La. 453, 455, 456, 31 So. 71. Where the defenses are not antagonistic, the courts of this state do not consider that codefendants may be prejudiced by joint trial.

In State v. Sims et al., 106 La. 453, 454, 31 So. 71, also cited in the Smith Case, a confession was made by one of the defendants implicating the other, who had not confessed, in the theft of a bale of cotton. This confession was admitted in evidence, but was restricted in its effect to the defendant making it. It is said in the opinion that: "We note that no severance was asked by either of the defendants." This was an appropriate case for the granting of a severance, if it had been seasonably requested. It is proper for the trial judge to grant a severance in case the confession of one jointly indicted

may implicate both, if the prosecution intends to offer same. State v. Robinson, 52 La. Ann. 616, 27 So. 124.

We know of no case in our jurisprudence in which it has been held advisedly by this court that codefendants on joint trial are entitled to a severance, *as a matter of right*, merely because one codefendant may desire, or be willing, to testify for the other codefendants.

To so hold would be to ignore the uniform jurisprudence in this state, commencing as early as the case of State v. Havelin, 6 La. Ann. 167, and continuing in unbroken line down to the present time.

Such a doctrine, without check or limitation, would be destructive to the efficient administration of public justice in all cases of major crimes committed in mass formation, such as the bank robberies of to-day, since the state would be compelled to have a separate trial for each of the codefendants in every case, before a conviction or acquittal could be had. Such a condition in the courts of this state would lead, in many cases, not only to a travesty upon public justice, but also to protracted and unreasonable delays in the enforcement of the law, should conviction be finally secured.

The defendants do not come within any of the exceptions entitling them to a severance *as a matter of right*. Their defenses are not antagonistic. No confession has been made by any one of the defendants implicating the others; but all the defendants, shortly after the robbery of the bank, repaired to Porretto's place of business with the fruits of the crime, and were concealed by him in an attic loft.

■ It is elementary that the acts and declarations of a conspirator, made during the continuance of the conspiracy and in the execution of the common design, are admissible not only against him, but against all of the other conspirators, although such acts and declarations may have taken place out of their presence. State v. Bolden, 109 La. 484, 487, 33 So. 571; State v. Ford, 37 La. Ann. 443, 460; Wharton Crim. Ev. §§ 698, 701.

It was as to these matters that Porretto, the state witness, testified.

Bills No. 2 (La Rocca and Bernard).

■ The defendants La Rocca and Bernard excepted to the testimony of Mitchell Porretto on the trial of the case on the ground that he was incompetent to testify because he was charged in an affidavit as accessory before the fact to the robbery, and could have been included in the information against defendants as a principal and joint defendant.

In the per curiam to this bill, the trial judge states that the evidence in the case shows that Porretto is an accessory before the fact and not a principal, as he was not present, actually or constructively, at the time the robbery was committed.

"All persons aiding, advising, or abetting the commission of a crime are not principals; for the aiders, advisers, and abettors who are not present, actually or constructively, are accessories. And, to be convicted as an accessory a person must be indicted as such." State v. Walters, 135 La. 1072, 1103, 66 So. 364, 376.

"At common law one indicted as principal cannot be convicted on proof showing him to be only an accessory before the fact, nor the converse." 1 Wharton Crim. Law (11th Ed.) § 242.

Porretto could not have been indicted, properly and legally, as a principal with the defendants. In fact, he was not indicted at all in any proceeding, but was merely held in custody as an accessory before the fact under an affidavit.

In this state it makes no difference whether an accomplice, who becomes a witness, has been convicted or not, or whether he is

joined in the same indictment with the prisoner charged, provided he is not put upon his trial at the same time. An accomplice is a competent witness under our law, and the fact that he is an accomplice affects his credibility only. State v. Prudhomme, 25 La. Ann. 522; Roscoe, 120; 2 Hawk. P. C. c. 46, § 90; Stocking v. State, 7 Ind. 326; 1 Greenl. § 379; State v. Russell, 33 La. Ann. 135; Archbold Crim. Prac. & Plead. pp. 500, 501, 502, 503; State v. Hamilton, 35 La. Ann. 1043; State v. Thompson, 47 La. Ann. 1598, 18 So. 621; State v. Angel, 52 La. Ann. 486, 27 So. 214.

It is held in the above cases that the rule that a codefendant may not testify for another defendant, when on joint trial, applies to principal offenders only and not to accomplices, who are competent witnesses until sentenced.

Porretto, the state witness, was therefore a competent witness, and his testimony was legally admitted.

Bills Nos. 3 and 4 (La Rocca and Bernard).

█ On the trial of the case, the judge a quo charged the jury in his general charge that: "If a co-defendant charged and tried together with his co-defendant for the same alleged offense takes the stand as a witness, his testimony should be considered by the jury only as it relates to himself. The testimony of one co-defendant should not be considered by the jury either against or in favor of the other co-defendant."

The defendants objected to this charge, and reserved bills, and requested the trial judge to give the following instruction to the jury: "If any of the defendants or if all of them have testified as witnesses, then I charge you that you have the right to consider their testimony as you would that of any other witness, and either for or against the one so testifying, and either for or

against his co-defendants as you should decide from all the evidence."

The special charge requested was properly refused, as the law applicable to the testimony of a codefendant was correctly charged by the trial judge in his general charge to the jury. State v. Smith, 156 La. 689, 101 So. 22; State v. Dreher et al., No. 28943 Supreme Court Docket, 166 La. 924, 118 So. 85.

Bills No. 5 (La Rocca and Bernard).

█ This bill was reserved by both defendants to the overruling of an original motion and a supplemental motion for a new trial.

The supplemental motion is based upon the ground that the ruling of the court in preventing the jury from considering the testimony of their codefendants denied to each of the defendants the due process of law, granted to him as a citizen of the United States by the Fourteenth Amendment of the Constitution of the United States.

Defendants were indicted in a court of competent jurisdiction. As a witness in his own behalf, each defendant was allowed to prove whatever was relevant to the case, but neither was permitted to testify for the other, because, being on trial with two others charged with crime in the same indictment, each of the defendants was incompetent to testify on behalf of his codefendants. State v. Breaux et al., 104 La. 540, 542, 29 So. 222.

It cannot be seriously contended by defendants that the Fourteenth Amendment as to due process of law has been violated in this case, merely because they were not permitted to have incompetent witnesses testify for them at the trial.

As a reason for not allowing one codefendant to make of the other a witness, where indicted as principals in the same bill, this court said, in State v. Angel, 52 La. Ann. 485, 486, 27 So. 214, "While in this case the codefendant was willing to go upon the stand

as a witness for the other, it is easy to foresee that, were a different ruling sustained than as above, it would sanction a practice that would likely result oftentimes in one on trial with another being called as a witness against his will, and greatly to his prejudice. And, though he might exercise his constitutional right, and refuse to give answers that might criminate himself, that itself would be forcing him into a situation fraught with embarrassment, if not of jeopardy, to his case."

The rule complained of by defendants operates alike and equally as to all principal offenders, actually or constructively present at the commission of a crime. As said in State v. Prudhomme, 25 La. Ann. 524: "If the principle, which permits an accomplice [accessory before the fact] to testify, be so restricted as to exclude all principals, it would have little practical importance."

The classification, therefore, is not arbitrary or unreasonable. Due process of law and the equal protection of the laws are had when the laws affect alike all persons similarly situated. Walston v. Nevin, 128 U. S. 582, 9 S. Ct. 192, 32 L. Ed. 544; Giozza v. Tiernan, 148 U. S. 662, 13 S. Ct. 721, 37 L. Ed. 599; Duncan v. Missouri, 152 U. S. 382, 14 S. Ct. 570, 38 L. Ed. 485.

■ It is contended that Act 157 of 1916, defining the competency of witnesses in criminal cases, violates section 2 and section 9 of article 1 of the State Constitution of the year 1921.

Section 2 of the Constitution declares that: "No person shall be deprived of life, liberty or property, except by due process of law."

Section 9 of the Constitution provides that the accused "shall have the right to defend himself, to have the assistance of counsel, and to have compulsory process for obtaining witnesses in his favor."

It is contended by the defendants that: "To deny an American citizen the right to have the testimony of witnesses, who can testify to his innocence, considered by the jury is to deny him due process of law, in violation of Section 2, Article 1 of the Constitution."

In State v. Roberson, 133 La. 806, 824, 825, 63 So. 363, the wife of defendant was called as a witness in his behalf and was not permitted to testify. Defendant asserted that, under article 9 of the State Constitution, the wife could testify because the accused has the right to have compulsory process to procure the presence of witnesses and the benefit of their testimony. It was held that the article in question refers only to witnesses who are qualified to testify under the law, and does not define the competency of witnesses.

As defendants were already in court by compulsory process, they cannot claim that such process was denied them. Due process of law does not include the right on trial to the testimony of witnesses who are incompetent under the laws of the state to testify. Act 157 of 1916.

Unquestionably the state has the power to determine and define the competency of witnesses in both civil and criminal cases. Therefore Act 157 of 1916 is not unconstitutional because, under it, a codefendant is not permitted to testify on behalf of a defendant on joint trial.

The original motions for new trial assign as errors the rulings complained of in the various bills of exception already reviewed.

Bills 1, 2, 3, and 4, reserved by the defendant Martin, are similar to those reserved by the defendants La Rocca and Bernard, and, for the reasons assigned, are without merit.

The motions for new trial, original and supplemental, were properly overruled.

The conviction and sentence of each of the defendants are affirmed.

O'NIELL, C. J., dissents.

OVERTON and ST. PAUL, JJ., dissent on bill No. 1.

O'NIELL, C. J. I dissent from the proposition that, when two or more codefendants are being jointly tried, and one of them "at his own request" takes the witness stand, his testimony cannot be considered by the jury as evidence either for or against the other defendant or defendants. That would be the most unjust and unreasonable doctrine ever announced. There is no authority for it in this state or in any other jurisdiction where the Legislature has removed the common-law disability by declaring that a defendant on trial "shall, at his own request but not otherwise, be deemed a competent witness." That is the precise language of the Act 157 of 1916, p. 379, which is taken literally from the federal statute on the subject, the Act of Congress of March 16, 1878, 20 Stat. at L. 30, c. 37, 28 USCA § 632.

Every text-writer on the subject and every court of justice in the civilized world maintains that, where there is a statute declaring that a person on trial, charged with a crime, is a competent witness in the case, his testimony, if he sees fit to testify, is legal evidence for or against his codefendant also on trial. The Supreme Court of the United States so held in Benson v. United States, 146 U. S. 325, 13 S. Ct. 60, 36 L. Ed. 991, and has never deviated from the ruling, viz.:

"But the last fifty years have wrought a great change in these respects, and today the tendency is to enlarge the domain of competency and to submit to the jury for their consideration as to the credibility of the witness those matters which heretofore were ruled sufficient to justify his exclusion. This change has been wrought partially by legislation and partially by judicial construction. By Congress, in July, 1864 (Rev. Stat. § 858 [28 USCA § 631]), it was enacted that 'in the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried,' with a pro-viso as to actions by and against executors, etc. And on March 16, 1878, it also passed an act permitting the defendant in criminal cases to testify at his own request. 20 Stat. 30, c. 37. Under that statute, if there had been no severance and the two defendants had been tried jointly, either would have been a competent witness for the defendants, and though the testimony of the one bore against the other, it would none the less be competent. Commonwealth v. Brown, 130 Mass. 279. The statute in terms places no limitation on the scope of the testimony, for its language is 'the person so charged shall at his own request, but not otherwise, be a competent witness.' His competency being thus established, the limits of examination are those which apply to all other witnesses. Legislation of similar import prevails in most of the states."

Prof. Wigmore in his master work on Evidence, vol. 1, § 580, p. 714, says:

"(1) *Separate trial*. The plain object of the statute was to remove the disqualification of the accused as a party; his common-law incompetency as co-indictee was due solely to his being a party in interest; therefore any and every such disqualification has disappeared. This is impregnable logic if the premises be conceded:" (Here the author cites and quotes from a long line of decisions from almost every state in the Union).

"This is plain enough, when the witness is called for the *prosecution*, because at least that much was already conceded at common law; but the reasoning applies equally to the witness called for his *co-defendant*, so that the common-law rule (as it had been applied by most Courts) must be deemed changed in that respect, by implication of the statute.

"(2) *Same trial*. The reasoning has precisely the same effect in its application to the case of the disqualification (unanimously conceded) at common law, namely, testimony of a co-defendant being tried at the same time. The statute has removed all his incapacity as a

party, both in its direct effect upon himself and in its indirect effect upon others."

Wharton's Criminal Evidence (10th Ed.) is also authority for the proposition, viz.:

"Par. 428. Statutory removal of accused's disqualification as a witness.—With the exception of Georgia, all the states have passed statutes regulating the conditions under which the accused becomes competent as a witness. Such statutes provide, generally, that the accused may, at his own election and in his own behalf, become a witness, the purpose being to give him the fullest opportunity to testify, but permitting no inference whatever to be drawn from his silence. The statutes confer a privilege, but do not impose an obligation; hence, while he is rendered competent, he cannot be compelled, in any criminal case, to become a witness against himself."

"Par. 438. Otherwise as to *co-indictees.*— As we have shown, co-indictees, under the statutes, may be witnesses for each other, and even where the statute does not render the co-indictee competent in terms, yet the sound rule is that where the statute removes the disqualification of the accused, his co-indictee can be called for him, and there is no substantive reason why such co-indictee may not be called against him. At common law co-indictees were disqualified."

The majority opinion in the present case seems to be that this court has already gone contrary to the rule which is otherwise universal. The decisions cited to sustain that belief, in the majority opinion in this case, are State v. Angel, 52 La. Ann. 486, 27 So. 215, State v. Smith, 156 La. 685, 101 So. 22, and State v. Dreher, 166 La. 924, 118 So. 85.

None of the cases cited sustains the proposition that a defendant on trial cannot testify for or against a co-defendant on trial. What was said on the subject in State v. Angel was mere obiter dictum, because the author of the opinion called attention to the fact, as the

report of the case shows, that the defendant who offered to testify, Numa Angel, was permitted to testify to all of the facts within his knowledge, "leaving to the jury the duty of applying the evidence thus given to the determination of the whole case." What was said on the subject in State v. Smith was also mere obiter dictum, because, as the author of the opinion said at the outset of his opinion, and as shown by the report of the case, the verdict and sentence had to be affirmed because there was no bill of exception taken, no assignment of error, and no error apparent on the face of the record. In State v. Dreher, there was not only no bill of exceptions taken to the judge's instruction to the jury that they could not consider the testimony of one of the defendants as evidence for or against the others, but the defendants actually requested the judge to so instruct the jury. This court therefore did not pass judgment on the correctness or incorrectness of the judge's instruction to the jury, and could not possibly have passed judgment upon it, as appears plainly from the report of the case, page 974 of the 166th La. Rep. and page 103 of the 118th Southern Reporter.

But, if we accept the doctrine of the Angel Case and of the Smith Case as being sound, the doctrine is that, when two or more defendants are jointly indicted, they must ask for a severance in order to be allowed to testify for or against each other. The only reason given in the Angel Case and in the Smith Case for saying that two or more defendants who are being jointly tried cannot testify for or against each other was that their remedy, to avoid being disqualified as witnesses for or against each other, was to ask for a severance. In the Angel Case, the reason for the ruling was said to be "They might have asked a severance, and been separately tried," and in the Smith Case the reason for the ruling was said to be "The remedy is to ask for a severance." If we say now that two or more

defendants who are jointly indicted are not entitled to the remedy of asking for a severance, in order to be allowed to testify for or against each other, we are saying that there was no reason or basis whatever for the statement, or obiter dictum, in the Angel Case and in the Smith Case, that two or more defendants, when jointly tried, cannot testify for or against each other.

And yet, strange to say, in the majority opinion rendered in this case, the Angel Case and the Smith Case are the only cases cited—besides the Dreher Case, where there was no such question before the court—in support of the doctrine that the testimony of two or more codefendants cannot be considered as evidence for or against each other, if they are tried jointly.

It is said in the majority opinion in this case: "Not one of the cases cited in the Angel Case holds that defendants on joint trial are entitled to a severance upon the mere asking for it." Of course, the decisions cited in the Angel Case do not support the ruling that codefendants cannot testify for or against each other without availing themselves of the remedy of asking for a severance. That is another reason why the decision in the Angel Case has nothing to rest upon. The cases that were cited in the Angel Case, as authority for the ruling, were all rendered at a time when, in this state, a defendant in a criminal prosecution was not a competent witness in his own behalf; and those decisions would not have been authority for the ruling in the Angel Case, even if they had been rendered subsequent to the statute of 1886, because, in every one of the cases cited, the testimony of the codefendant, which was held to be inadmissible for or against another defendant, was a confession made out of court, when the party confessing was not under oath, or subject to cross-examination. Such a confession, of course, is not admissible in evidence except against the party making the confession.

It is said in the majority opinion, in this case, "The announcements in the Smith Case that 'The remedy is to ask for a severance,' and in the Angel Case that 'These parties * * * might have asked a severance, and been separately tried,' are merely loose and inaccurate expressions of the court," etc. On the contrary, those expressions were the only reason given for the statement, which was merely obiter dictum in both cases, that the testimony of a defendant cannot be considered as evidence for or against his codefendant.

One of the most astonishing declarations in the majority opinion in this case is this: "Even in cases where a severance has not been asked for, or has been refused, each codefendant is protected against the adverse testimony of his codefendant, under the charge of the court to the jury not to consider such testimony." How does that protect a defendant who is denied the benefit of the testimony of his codefendant, when such testimony is favorable to him?

The case of State v. Sims et al., 106 La. 453, 31 So. 71, is cited in the majority opinion in this case, with the statement: "This was an appropriate case for the granting of a severance, if it had been seasonably requested." Of course, it was an appropriate case for a severance. The confession, which was made by one of the defendants, and was held to be inadmissible against the other, was made out of court, when the witness was not under oath, or subject to cross-examination. That is one of the cases that has been cited in support of the monstrous proposition that the testimony of a defendant on trial cannot be considered as evidence for or against his codefendant.

The author of the majority opinion in this case, on the sixth page (121 So. 747),[1] says that it would greatly hamper the administration of justice if the courts were compelled to

[1] Ante, p. 211.

grant a severance, and a separate trial for each defendant, in every case where one of several codefendants desires to testify for or against his codefendant or codefendants. That is why I insist that there is no necessity for granting a severance in order that a defendant on trial may exercise his right to testify for or against his codefendant or co-defendants. There is no authority anywhere for such a proceeding, except the statement in the Angel Case and in the Smith Case that one of several codefendants could not testify for or against another without first obtaining a severance, and that the remedy in such a case is to ask for a severance. What the majority opinion in this case does is to abolish the unfounded reason for the declaration in the Angel Case and in the Smith Case that the testimony of one codefendant cannot be considered as evidence for or against another, but retain the unfounded declaration itself, as being a sound statement of the law, notwithstanding it was mere obiter dictum in each case, and has now no reason whatever for its existence.

On the ninth page of the majority opinion in this case (121 So. 748),[2] the author quotes the following from the Angel Case:

"While in this case the co-defendant was willing to go upon the stand as a witness for the other, it is easy to foresee that, were a different ruling sustained than as above, it would sanction a practice that would likely result oftentimes in one on trial with another being called as a witness *against his will, and greatly to his prejudice.* And, though he might exercise his constitutional right, and refuse to give answers that might criminate himself, that itself would be forcing him into a situation fraught with embarrassment, if not of jeopardy, to his case." (The italics are mine.)

When the author of the opinion in the Angel Case wrote that statement, he simply over-looked the fact that the statute of Louisiana, and the federal statute, and the statute of every state, which makes the defendant in a criminal prosecution a competent witness, declares that the defendant "shall, *at his own request but not otherwise,* be deemed a competent witness." Where, then, is the danger of "one on trial with another being called as a witness *against his will* and greatly to his prejudice"?

Aside from the obiter dictum in the Angel Case and in the Smith Case, there is no authority whatever for the monstrous doctrine that the testimony given by a defendant on trial cannot be considered as evidence for or against his codefendant. It is conceded in the majority opinion in this case that the only basis for the pronouncement of the doctrine in the Angel Case and in the Smith Case was unsound; that is to say, that the remedy of the codefendants was to ask for a severance.

The ruling in the present case is the most unjust and hurtful ruling that could well be imagined. It means that the district attorney, in any case, has the right to deprive the defendant of the benefit of the testimony of any witness, by including him in the bill of information or indictment, and trying him at the same time. According to this new doctrine, if the district attorney desires to use one of the several defendants as a witness against his codefendant or codefendants, all that the district attorney has to do is to try the codefendant separately. But, no matter how many defendants are jointly indicted, they are not entitled to the benefit of the testimony of each other; each is entitled to the benefit only of his own testimony.

That doctrine, which was referred to only incidentally in the Dreher Case, received such general condemnation that the Criminal Code Commission inserted in the Code of Criminal Procedure article 474, viz.:

"When several persons are on trial at the same time, under the same indictment, each

---

[2] Ante, p. 214.

may be a witness on his own behalf or on behalf of his co-defendants."

It is true that the Code of Criminal Procedure was not adopted in time for the defendants in this case to be protected by article 474; but the point which I make is that that article was inserted only because of the terrible injustice which would have resulted if this court should have adopted, as the law, the expressions which were made, unnecessarily, in the Angel Case and in the Smith Case, and which were referred to incidentally in the Dreher Case, to the effect that the testimony given by a defendant on trial cannot be considered as evidence for or against a codefendant also on trial. The Criminal Code Commission was not created for the purpose of protecting defendants against injustice in criminal prosecutions. It was created for the avowed purpose of doing away with all of those purely technical rules which protected criminals. And yet this Criminal Code Commission deemed the obiter dictum, which was expressed in the Angel Case and in the Smith Case, and which was referred to only incidentally in the Dreher Case, as being such an unfair doctrine, that the commission took occasion to forbid this court to adopt it. It is to be observed that the provisions of article 474 of the Code of Criminal Procedure were not in the original draft of the proposed Code, as printed and distributed by the commission.

If any one reading this opinion doubts my statement that the expression in the Angel Case and in the Smith Case, which is relied upon as a precedent for the ruling in this case, was mere obiter dictum, I beg of him to read those opinions; and, if any one reading this opinion doubts my statement that the question which is presented in this case was not presented at all in the Dreher Case, I trust that he will read that opinion.

My great difficulty is that I cannot convince a majority of the members of the court that the Angel Case, or the Smith Case, or the

Dreher Case, did not establish a precedent, compelling us to perpetuate a doctrine which is manifestly unfair and unreasonable—that the testimony of a defendant on trial in a criminal prosecution cannot be considered as evidence either for or against a codefendant also on trial.