FOURNET, Chief Justice.
 

 Appellants, Donald Vale and James Vale, having been jointly tried and convicted on a bill of information charging them with the wilful and unlawful possession and control of “a narcotic drug, to-wit: Heroin,” in violation of R.S. 40:962,
 
 [1]
 
 were sentenced as multiple offenders under R.S. 15:529.1
 

 [2]
 

 to serve 15 years each at hard
 
 *1063
 
 labor in the Louisiana State Penitentiary; and, for the reversal of their conviction and sentence they rely on several alleged errors committed during the course of their trial.
 

 The first alleged- error complained of forms the basis of Bill of Exception Number 1 reserved by James Vale when the trial judge overruled his motion to suppress certain evidence that is the foundation of this prosecution, i. e., 3 capsules of off-white powder; 171 capsules found in a contraceptive, 76 clear capsules found in a Bufferin bottle and 103' small white pills, and certain paraphernalia used to administer narcotics composed of a metal spoon, glass eyedropper, plastic -needle- holder, and'two needles, procured as a result of a search of the premises occupied '-by the accused and his mother. The motion' was predicated upon the contention that the objects were fruits of an illegal- search and seizure, having been conducted without benefit of a search warrant and was not incidental to' a valid arrest.
 

 The fact that the objects .sought to be suppressed were secured without the benefit of a search warrant does, not necessarily constitute them as being illegally obtained and therefore inadmissible in evidence, as it is an unreasonable search and seizure that is prohibited' by the Fourth Amendment to the United States Constitution
 
 [3]
 
 and Article 1, Section 7 of this State’s Constitution.
 
 [4]
 

 Under the express provisions of the Code of Criminal Procedure adopted by the Legislature by Act No. 310 of -1966,
 
 “A
 
 peace officer may, without a warrant, arrest a person when: (1) The. person to be arrested has .committed an offense, in his presence, * *. * ” and “(3) The peace of
 
 *1065
 
 fioef .has' reasonable cause .to believe' that the'.person' to he- arrested has committed an offense although not in the .presence .of the officer,”
 
 [5]
 
 and'“ * * * take'from the person arrested all weapons and incriminating articles which he may. have about his person.
 
 [6]
 
 “Reasonable belief;— or .‘probable cause,’ as it is termed under federal 'standard — to make an arrest without a .warrant exists-when the facts and circumstances within, the arresting officer knowledge,-, and.'of which he had reasonable .trustworthy information, are suf-..ficient in themselves to justify a man of average caution in the belief that.a felony has been or' is. being committed.” State v. Johnson, 249. La. 950, 192 So.2d. 135; See also, State v. Green, 244 La. 80, 150 So.2d 571, State v. Aias, 243 La. 945, 149 So.2d 400; State v. Calascione, 243 La. 993, 149 So.2d 417; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.
 

 As was very aptly observed by the United States Supreme Court in the case of United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, “The right-‘-to -search the'place -where the" arrest is'made -iñ ¿¡Mer to: find and seize-things -connected with crime as its fruits' or as the means-by which it was committed’ seems to have stem--not .'only from -'the 'acknowledged authority to search, .the' person, hut'- also .|f-rom the; long-standing practice-of sea'rch-;i-ing-for other proofs of guilt within the control of the accused found- Upon -arrest. United States v. Weeks, 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652, 653. It be came accepted that the premises where the arrest was madé,- which-premises were under the control of the person 'arrested and where the crime was1 being committed, were subject .to search without a search.warrant.
 
 .Such a ' search was
 
 -
 
 not
 
 ‘unreasonable’,” citing Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Carroll v, United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. (Emphasis added.)
 

 The-only-evidence adduced-at-'the' hearing oil the accused’s'motion to- suppress was that of-officers of the Narcotics-Division of the New Orleans Police'-Department involved in the árlest, search, and1 Seizure, and none was "offered in rebuttal:'According to the 'record, about • 11:45 AVM. "on April- 24,-1967- Officers; Brady,'Látímañn, and Soule viere trying-to locate the'-déf end-ant;'-'Donald Vale,' for whose'- áríéfet- they r'held-two'-capiases from the Cr.imifíá'I' Dis-tricf Court-fdr-'the-Parish óf Oi'lea’nsj' Divi'oh t#o4 charges for viól-atióif'of the 9rna-rcotíes act: - '■Having-'" information that ÍDoiiald-' Vale" w¥s'-residing -at-A,1826’-i;Afts StPeet in the City ñf "New Orleans',’the three officers pf-Oceeded-there i-n an- unítíarked dar .which theyc-parked"; approximately! one-half block? from! the:-,r.esidence-and began ■ a- ¡stirveillance'.of ;’the- house, from. ya-riouB :ppsi
 
 *1067
 
 tions as they did not want their presence known until they were sure that Vale was at the location so as not to alert him to allow him to avoid arrest. After approximately 15 minutes the officers observed a green 1958 Chevrolet drive up and sound the horn and after backing into a parking place, again blew the horn. At this juncture Donald Vale, who was well known to Officer Brady having arrested him twice in the previous month, was seen coming out of the house and walk up to the passenger side of the Chevrolet where he had a close brief conversation with the driver; and after looking up and down the street returned inside of the house. Within a few minutes he reappeared on the porch, and' again cautiously looked up and down the street before proceeding to the passenger side of the Chevrolet, leaning through the window. From this the officers were convinced a narcotics sale had taken place. They returned to their car and immediately drove toward Donald Vale, and as they reached within approximately three cars lengths from the accused, (Donald Vale) he looked up and, obviously recognizing the officers, turned around, walking quickly toward the house. At the same time the driver of the Chevrolet started to make his get away when the car was blocked by the police vehicle. The three officers promptly alighted from the car, whereupon Officers Soule and Laumann called to Donald Vale to stop as he reached the front steps of the house, telling him he was under arrest.
 
 [7]
 
 Officer Brady at the same time, seeing the driver of the Chevrolet, Arizzio Saucier, whom the officers knew to be a narcotic addict, place something hurriedly in his mouth, immediately placed him under arrest and joined his co-officers. Because of the transaction they had just observed they, informed Donald Vale they were going to search the house, and thereupon advised him of his constitutional rights. After they all entered the front room, Officer Laumann made a cursory inspection of the house to ascertain if anyone else was present and within about three minutes Mrs. Vale and James Vale, mother and brother of Donald Vale, returned home carrying groceries and were informed of the arrest and impending search. At this time Officer Laumann returned to the living room and requested James Vale accompany him- into the bedroom while it was searched, and Mrs. Vale joined them. In a chifforobe in that room Officer Laumann found a wool coat which contained three capsules of off-white powder, at which time Donald Vale was called into the bedroom and in response to Officer Laumann’s question as to whom these items belonged, Donald Vale volunteered that it was his. According to the testimony of Officer Brady, Mrs. Vale answered when asked who stayed in this bedroom, “Donald does not stay at this address. He does not
 
 *1069
 
 stay here at all. Pat Vale (James) stays here and this is his bedroom.” James was then immediately placed under arrest by Officer Laumann and was informed of his constitutional rights. Officer Laumann then proceeded with the search and found in a brown suit in the chifforobe 171 capsules of . off-white powder in a contraceptive, 76 clear capsules with powder in a Bufferin bottle and 103 small white tablets in a yellow finger stall, all of which Donald Vale volunteered belonged to him and at this time Officer Brady asked him for his narcotics paraphernalia usually used in the trade and he answered, “You have all the rest of it, I might as well give you that too.” He then lead Officer Brady to the bathroom linen closet where he found a spoon and a narcotics outfit wrapped in brown paper containing a glass eyedropper, plastic needle holder and two needles under the towels as pointed out by Donald Vale. Following this an examination of both of the defendants’ arms revealed scars resulting from injections of narcotics known as “track marks.” All the seized items were taken to the Narcotics Division Office and defendants were booked and jailed.
 

 Unquestionably under the facts and circumstances of this case as above related, the arresting officers were justified in their belief that a felony was being committed by Donald Vale and Saucier, and the arrest of the two was lawful. We are also of the opinion the officers, being well trained in their profession and being knowledgeable of the methods and procedure of the trade, were justified in searching the house from which they had observed Donald Vale emerge under the circumstances above related in the belief that this was his place of operation and from which they would find the supply as fruits for which the arrest was made. The search of the house in the immediate vicinity of the arrest of Donald Vale and substantially contemporaneous therewith was reasonable under the Fourth Amendment, particularly, when narcotic drugs are involved, as in the case at bar, which are easy to remove, hide or destroy. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; State v. Calascione, supra; State v. Aias, supra; compare, Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856. It would be unreasonable to require the officers under the facts of the case to first secure a search warrant before searching the premises, as time is of the essence inasmuch as the officers never know whether there is anyone on the premises to be searched who could very easily destroy the evidence. Harris v. United States, 331 U.S. 145, 152, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Francolino, 2 Cir., 367 F.2d 1013, cert, denied, 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110; People v. Acosta, 213 Cal.App.2d 706, 29 Cal.Rptr. 241.
 

 Counsel for James Vale argues strenuously, both orally and in brief, that the trial
 
 *1071
 
 judge' improperly distinguished the casé of James v. State, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30, relied upon by defendant.
 

 From..our .appreciation of the. case, • wherein the..United States Supreme Court-overruled a- decision of this court, State v. James, 246 La. 1033, 169 So.2d 89, it is clearly distinguishable and inapposite from a factual. as. .well as .legal- standpoint. In the. James .case the narcotics, sale -and arrest -tqok place in an automobile more than two. blocks from . the house, subsequently searched and the- United States Supreme Court, -held, that the. search could not be regarded-as-an incident,to the arrest and was-therefore illegal, observing, .“A search ‘can..be incident.to an.arrest .only if it is .substantially, contemporaneous with the arr.est. and-, is..confined -to- the immediate vici.njty of the.arrest.’” .......
 

 Counsel’s argument, in behalf of Janies Vale that the trial judge'had further committed' error in' overruling' his motion to suppress'' in that the decisión was also based on the ground that no one before the cpurt had any standing to challenge the illegality of the search,.is not suppdxted. by the. record. .True, the statement was .made, by the trial, judge .in overruling Dpnald, .Vale’s motion, to suppress, which was neither timely filed nor any reasonable ground given for the delay, but as reflected'by th'é'per curiam of the trial judge, his' ruling was not' based' on that ground as Contended by counsel, the pertinent part which reads as follows:
 

 “This bill of exceptions, filed by the defendant, Donald Vale, is somewhat confusing inasmuch as a part of said bill of exceptions was reserved to the overruling of a Motion to Suppress and, secondly, when certain evidence was introduced, an objection was made by the defense as to the introduction of this evidence which evidence was the result of a search conducted by members of the New Orleans Police Department.
 

 “The Motion to Suppress the evidence filed on behalf of this defendant reiterates all of the allegations made by defendant, James P. Vale, and, in addition thereto, alleges that the defendant, Donald Vale, did not live in the residence located at 1826 Arts Street.
 

 . “The Motion to Suppress on behalf of Donald Vale was filed the morning-of the trial and was heard outside .the. presence -of the jury panel and between the attorneys and the Court it was determined that the Motion to Suppress, filed on behalf of Donald Vale, contained all of the allegations that were alleged by the defendant, James P. Vale,- in his Motion to Suppress- the Evidence and, in addition thereto, Donald Vale’s Motion to Suppress alleged that he was not- a resident of 1826 Arts Street.
 

 ' “In overruling the Motion to 'Suppress ' on behalf of Donald Vale, the Court was
 
 *1073
 
 cognizant of all of the evidence pertaining to the search and seizure inasmuch as the evidence pertaining to the search and seizure was the same evidence as had been presented and passed upon by this Court in trying the Motion to Suppress on behalf of James P. Vale.
 

 “The only new proposition presented by this Motion to Suppress was the fact that the defendant, Donald Vale, did not reside at the address 1826 Arts Street, the place that was searched. * * *
 

 “A recitation of the facts as disclosed on the trial of the Motion to Suppress on behalf of James P. Vale discloses without doubt that the police offi•cers had probable cause to search the residence of 1826 Arts Street, having just seen Donald Vale come out of the residence, speak to someone in a car, ' .go .back into the residence and then ■come out again and again speak to the ■person in the automobile. * * *
 

 “It would also .be noted that Donald Vale was arrested immediately in front of the residence 1826 Arts Street after 'he. was observed by the police officers coming from the residence 1826 Arts Street.
 

 .-.‘‘Under, these circumstances, the court •overruled the Motion to Suppress on the .ground that the search was a valid search .and'seizure.
 

 From the foregoing it is .clear.that counsel’s argument- lacks merit and that the trial judge properly overruled . .Donald Vale’s motion to suppress the. fruits .of the search, of 1826 Arts Street and his objection when they were offered into evidence.
 

 The next bill of exception relied upon by James Vale was reserved to the overruling of his pre-trial motion for severance wherein he alleged a joint trial would “(1) work a severe hardship * * * and cause him great prejudice and bias before a jury,” “(2) the place where the narcotics were found, namely the coat, the ownership of the coat was claimed by the defendant Donald Vale and therefore to force the defendant to trial with his brother would additionally work a prejudice to him,” and “(3) that because of the facts, surrounding the arrest of both defendants .in this case, the defense of the defendant, James P. Vale, would be. antagonistic to that of the defendant, Donald Vale.” .
 

 This bill of exception is without merit. The Code of Criminal Procedure specifically declares that “Jointly indi.cted defendants shall be tried jointly unless: (1JjThe •State elects -to try therp separately; or (2) The court,, on .th.e motion, of, the defendant, and after .contradictory:/hearing with the-district, attorriey, Is'-satiSfiM that justice requires a--severance.-’” Article 704.
 

 
 *1075
 
 As was very aptly observed by the trial judge (who first referred to the rule of law controlling in such cases) there was neither facts set out in the motion nor by argument of counsel to show any hardship to defendant or that could be considered as prejudicial to his cause, nor did he find any facts from which it could be concluded that the defense of James Vale would be antagonistic to Donald Vale’s.
 

 We fail to appreciate under what process of reasoning it can be deduced that the joint trial of James and Donald Vale would cause a hardship or be prejudicial to the defense of James Vale when he alleged in his motion that his co-defendant, Donald, had taken full blame for the narcotics and the paraphernalia concealed in the house where he resided. We believe, as observed by the trial judge, the statement alluded to his brother reached the jury through the testimony of the officers and such evidence, on the contrary, was to his benefit.
 

 Although it was not pleaded in the motion for severance that James intended to call his brother, his counsel, nevertheless, both orally and in brief for the first time, argues that reversible error was committed inasmuch as the denial of his motion deprived him of the right to call his brother to the stand for the purpose of eliciting testimony to hold him blameless. Counsel attempts to support his argument by ingenious process and reasoning that the comments to be found under article 704 of the Code of Criminal Procedure show that “Louisiana had adopted the Federal rule as to the right to a severance,” citing United States v. Echeles, 7 Cir., 352 F.2d 892, in which that court referred to the case of DeLuna v. United States, 5 Cir., 308 F.2d 140, on the subject. Counsel concedes that this plea was not made in the motion, but contends the court was bound to supply this question as a matter of law. He also argues James was thereby deprived of his mother’s testimony.
 

 There is no merit to counsel’s- contention. Counsel does not state any reason why James was deprived of his mother’s testimony, and we can think of none. As to counsel’s contention as to James’ right to a severance under article 704 of the Code of Criminal Procedure because of certain comments to be found thereunder, and his appreciation of the intent of the legislature in adopting the article, it is untenable. As pointed out in State v. Pebworth, 251 La. 1063, 208 So.2d 530, “Severance is not a matter of right but rather one that rests in the sound discretion of the trial judge ‘whose ruling will not be interfered with, unless manifestly erroneous and injurious to the accused.’ State v. Cook, 215 La. 163, 39 So.2d 898.”
 

 We think the observation of this court in the case of State v. La Rocca, 168 La. 204,
 
 *1077
 
 121 So. 744, speaks eloquently in support of why severance on joint trials is not a matter of right, to-wit:
 

 “We know of no case in our jurisprudence in which it has been held advisedly * * * that codefendants on joint trial are entitled to a severance as a matter of right, merely because one codefendant may desire or be willing, to testify for the other codefendants. * * * Such a doctrine, without check or limitation, ■would be destructive to the efficient administration of public justice in all cases of major crimes committed in mass formation, such as the bank robberies of today, since the state would be compelled to have a separate trial for each of the •codefendants in every case, before a conviction or acquittal could be had. Such a condition in the courts of this state would lead, in many cases, not only to a travesty upon public justice, but also to protracted and unreasonable delays in the enforcement of the law, should conviction be finally secured.”
 

 The federal decisions on this subject are legion and to the same affect. See, Gorin v. United States, 1 Cir., 313 F.2d 641, cert, denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed. 2d 1052; United States v. Sopher, 362 F.2d 523, cert, denied, 385 U.S. 928, 87 S.Ct. 286, 17 L.Ed.2d 210; United States v. Van Allen, D.C., 28 F.R.D. 329.
 

 We find no difficulty in distinguishing the cases relied upon by defendant. In the Echeles case the court found that Echeles’ cause was prejudiced in denying him a severance from his co-defendant, a former client, because of his inability to call him to testify to obtain evidence of prior statements holding Echeles blameless, whereas in the instant case, it cannot be said James was prejudiced for his co-defendant’s prior statements claiming full responsibility and ownership of the narcotics and paraphernalia forming the basis of this suit was introduced into evidence, reaching the jury through the testimony of the officers. The DeLuna case is likewise inapposite from a factual as well as a legal standpoint for therein the co-defendant not only took the stand placing the blame on the other, who did not take the stand, but his attorney commented on the failure of the co-accused to take the stand. This was held to have prejudiced the defendant who failed to take the stand.
 

 The next error complained of by Donald Vale was to the overruling of his objection to the admission into evidence his oral confession or inculpatory statements as to the ownership of the narcotics found following his arrest and during the search. Donald Vale based his objection on the contention that he was not advised of his constitutional rights. However, his counsel now concedes the officer informed him of his rights, but claims- “it is not sufficient that a defendant be merely appraised of his rights, it must also indicate that the
 
 *1079
 
 defendant understands what is • being ' explained to him,” and suggests “it is entirely doubtful” • that he fully -understood what was being explained to him.
 

 .Counsel for the accused in reserving a bill of exception to the judge’s ruling made the entire note of evidence a part of the bill, a perusal of which will unmistakably support the judge’s ruling in that it discloses promptly after the defendant’s arrest and after entering the house he was fully apprised of .his constitutional rights in accordance with the guidelines set forth by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. He unquestionably understood the import, thereof and, nevertheless, without any coercion, threats or inducements volunteered the statements that the .objects seized belonged to him.
 

 The next two errors complained of by defendant, Donald Vale, also lack merit as reflected by the per curiam of the trial judge thereto:
 

 “Bill of Exception No. 3 and Bill of Exception No. 4 will be treated together as one bill of exception, although reserved’ separately, and separate bills of exceptions having been filed, because State Exhibit S-2, a spoon, and State Exhibit S-3, a brown paper bag containing a hypodermic needle and an eye dropper,’ commonly referred to as ‘an outfit’, were found together in a -plastic -bag in the residence of 1826 Arts Street. •
 

 “These objects were the fruits of the search conducted by the members of the Narcotics Division of the New Orleans Police Department, and they were introduced by the State for the purpose of showing system and intent on the part of the defendant.
 

 “As has been set forth in other' per curiams to other bills of exceptions, the crime of possessing narcotics is a secretive proposition. It is a crime where intent is a necessary element and for the purpose of showing knowledge arid intent, State Exhibit S-2 and- State Exhibit S-3 were admitted into evidence'.”
 

 Each.defendant claims the trial judge erroneously overruled their motion for a new trial. Donald Vale’s motion for a new trial is based solely on the trial judge’s overruling his motion to suppress the evidence, contending “(1) * * * that the motion to suppress evidence was overruled by the Court on the sole grounds that since defendant did not live or own the premises searched he did not have standing to object to a search and seizure,” and .“(2) * * * the Court was in error in stating there was probable cause for an arrest and search incidental thereto, since no evidence was heard on Donald Vale’s motion to-suppress.”
 

 
 *1081
 
 We are in full accord with the observation of the trial judge in his per curiam to this bill that the contention has already-been considered and resolved in Donald Vale’s Bill of Exception Number 1 and presents nothing new for our consideration.
 

 The trial judge in his per curiam to the hill of exception reserved to the overruling of James Vale’s motion for a new trial prepared by his counsel shows, in addition to reiterating the alleged error committed during the trial and which had already been disposed of, thus presenting nothing new for consideration, alleged that the “numerous adverse newspaper articles referring to mover’s brother and co-defendant, Donald Vale, deprived mover of a fair and impartial trial when tried without a severance, and when tried with his brother and co-defendant, Donald Vale.”
 

 We think the trial judge properly overruled the motion. In disposing of the contention that the newspaper articles deprived him of a fair trial when tried without a severance he pointed out this was not mentioned in the motion for severance and, in any event, it is not a matter to be considered in a motion for a severance but one for a change of venue which was never filed.
 

 The trial judge also calls our attention to the fact there was also a motion for a new trial subsequently filed by James Vale in proper person in which the bills of exception reserved during the trial are re-urged, and in addition, he questions the sufficiency of the evidence and contends that the attorney appointed by the court to defend him did not have time to properly prepare the case. By a supplemental motion for a new trial he urged that he was not competently defended by this attorney, and it was error for the court to appoint him because of certain unethical conduct by the attorney in another matter.
 

 A review of the record will disclose defendant was represented by counsel of his own choice when arraigned on May 1, 1967, but on August 21, 1967 the attorney filed motion to withdraw as counsel which, following hearing on August 25, was granted. On September 6, eight days prior to trial, the court appointed counsel for James who represented him throughout the trial, no objection to this counsel being made at the time of the appointment or during 'the trial. Moreover, as pointed out by the trial judge, the alleged misconduct on the part of counsel had no connection with this case, and we think the court properly found the attorney not only did nothing unethical during the trial of this case, but his conduct' of the case was above reproach, having defended the accused vigorously and ably and to the best of his ability.
 

 
 *1083
 
 Counsel
 
 now
 
 representing defendant
 
 [8]
 
 apparently in evaluating his client’s case obviously agreed with the trial judge and abandoned all contentions urged in the motion for a new trial, with the exception that he claims the court erred in denying the motion because of the insufficiency of the evidence urging his client was convicted on "rather weak ‘constructive possession’.” In other words, counsel does not claim there was no evidence to convict him of the crime charged, but states, in effect, it was merely circumstantial, hence, weak.
 

 Although the appellate jurisdiction of this court is specifically limited by our constitution to questions of law alone,
 
 [9]
 
 when it is asserted there is a total lack of evidence to support the conviction of the crime charged, or any element thereof, this raises a question of law that is subject to our review. In other words, this court lacks jurisdiction to decide a question of fact or the sufficiency of the evidence relating to the guilt or innocence of a party accused in a criminal prosecution; but, where there is some evidence, whether it be direct or circumstantial, to sustain the conviction, the Supreme Court cannot pass upon the sufficiency thereof, as that comes within the exclusive province of -the jury. State v. Campbell, 173 La. 831, 138 So. 853; State v. Verret, 174 La. 1059, 142 So. 688; State v. Fountain, 175 La. 221, 143 So. 55; State v. Bonner, 193 La. 387, 190 So. 621; State v. Haddad, 221 La. 337, 59 So.2d 411; State v. Champagne, 251 La. 849, 206 So.2d 518.
 

 Following the overruling of the motions for new trial filed by each of the defendants, the State filed a double bill of information against Donald Vale and James Vale charging each as a second offender under R.S. 15:529.1
 
 [10]
 
 to which each reserved a bill of exception to the overruling of their motion for a jury trial thereon.
 

 In denying the defendant’s motion for trial by jury the trial judge in his per curiam pointed out that R.S. 15:529.1 provides for increased punishment for second and subsequent offenders and prescribes the procedure to be followed, but does not require a trial by jury, citing State v. Guidry, 169 La. 215, 124 So. 832. We are in full accord with this conclusion for it is well established that this law does not make it a crime to be a multiple offender, but it merely prescribes an enhanced penalty for multiple offenders and the procedure to be followed by the trial judge. State v. Hingle, 242 La. 844, 139 So.2d 205. It is,
 
 *1085
 
 therefore, clear that Duncan v. Louisiana, 391 U.S. 145, 194, 88 S.Ct. 1444, 20 L.Ed. 2d 491, 522, relied upon by defendant is inapposite from a factual and legal standpoint, and, therefore, not controlling.
 

 We find the trial judge properly overruled the motion to quash the bill of information filed under the multiple offender statute that was filed by Donald Vale, observing in his per curiam as follows:
 

 “The Motion to Quash, in paragraph 1, sets forth that Louisiana Revised Statute 15:529.1, under which the defendant stands charged, is unconstitutional and is in violation of the Eighth Amendment of the Constitution of the United States in that for the defendant to be punished as a habitual offender would be to inflict cruel and unusual punishment on him.
 

 “It has been repeatedly held in this State and a number of other states that to punish a person who is a habitual offender merely increases the penalty for the offense committed and that the punishment as a habitual offender is not cruel and unusual punishment.
 

 “The second paragraph of the Motion to Quash states that the multiple offender statute seeks to punish a status rather than a crime. This contention is untenable in view of the decisions of the Louisiana Supreme Court, which decisions have been cited in another per curiam to another bill of exception, as it has been held that the multiple offender’s act does not punish a status, but, rather increases the punishment for a double or multiple offender,.
 

 “Paragraph 3 of the Motion ot Quash filed on behalf of this defendant sets forth that although Louisiana Revised Statute 15:529.1 may be constitutional,
 
 [11]
 
 that said statute is applied by the authorities in an unconstitutional manner.”
 

 The trial judge points out in his per curiam that the latter point was made by this defendant’s co-defendant, James Vale, in his motion to quash and disposed of under a per curiam to his Bill of Exception No. 8.
 

 We find the record reveals a hearing was held on that motion as applied to both defendants, and at this hearing it was conceded by defense counsel that the stat-
 

 
 *1087
 
 ute is- constitutional, but it was contended there is discrimination in its application. However, the only evidence offered was the testimony of an assistant district attorney for the parish who testified it was the policy of the district attorney’s office to prosecute as multiple offenders all who were tried and convicted of a second or subsequent felony,, and under the broad power and discretion vested in the district attorney, that generally it was the procedure to grant immunity from prosecution as multiple offender to those entering a plea of guilty to a felony charge if they had a previous conviction for a felony. We, therefore,- agree with the trial judge in his conclusion that it was not shown that there was. any. discrimination in the application of the statute involved.
 

 The trial judge also held a hearing on that portion of James Vale’s motion to quash with respect to his allegation that the judge could not consider his Alabama conviction in determining his guilt as a multiple offender; and, we think he properly disposed of the same.
 

 A study of the record discloses that at the time of the hearing James .Vale stipulated he was the one convicted in Alabama, but he did not stipulate the documents offered by the State in regard to the Alabama proceedings prove what the offense in Alabama was, nor- that it was a felony in Louisiana. The case was submitted on the documents produced from Alabama.
 

 We find the record shows that James Vale was convicted in Alabama of second degree burglary
 
 [12]
 
 and the trial judge concluded, and we think correctly, that this offense was equivalent’ to the offense in this state of simple burglary.
 
 [13]
 
 
 *1089
 
 While we do not have a statute labeled “second degree burglary”, the nature of the offense of which the defendant was convicted in Alabama, if committed in this state would be a felony as covered by our statute labeled “simple burglary.”
 

 Although the defendant raised the issue that he was not represented by counsel at the time of the Alabama conviction, it has not been argued here. However, the trial judge points out the motion merely states he was not represented and he failed to introduce any evidence to support the allegation. Moreover, we have examined the record from Alabama and. find it reflects clearly that James Vale was not indigent at the time of the Alabama conviction since he had at the time secured a professional bondsman for his $5,000 bail bond and he had requested the Alabama judge grant him time to employ counsel to represent him, which was granted. It was upon his failure to return to court at the specified time with counsel that a writ for his arrest issued. Thereafter he withdrew his plea of not guilty and entered a plea of guilty, thus, clearly indicating he was fully cognizant of his right to an attorney and validly waived his right.
 

 Finally, in addition to the alleged errors hereinabove considered, we note in the appendix to the brief of James Vale counsel has reserved, but neither briefed nor argued Bills of Exception No. 4 and 5, simply stating, “That the Court erred in admitting evidence of ‘track marks’ to show possession,” and “That the Court erred in admitting the purported expert testimony.of Officer Soule as to ‘track marks’.”
 

 We find no merit to these .bills. In fact, we find, “It is conceded that this Court has held ‘track marks’ are admissible’ to show guilty knowledge in a possession case.” See, State v. Johnson, 228 La. 317, 318, 82 So.2d 24; State v. Harris, 232 La. 911, 95 So.2d 496; State v. Maney, 242 La. 223, 135 So.2d 473. The ruling in respect to admitting the testimony of Officer Soule as an expert is fully supported by the record.
 

 For the reasons assigned the conviction and sentences of the defendants are affirmed.
 

 [1]
 

 . R.S. 40:962 provides: “A. It is unlawful for any person to manufacture, possess, have under his control, sell, give, . deliver, transport, prescribe, administer, dispense, or compound any narcotic drug, except as provided in this-Sub-part, or to be or become an addict as defined in R.S. 40:961. * *
 

 [2]
 

 . R.S. 15:529.1 provides: “* * * JD. If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state or of the United States; or any foreign government or
 
 *1063
 
 country of -a 'crime, Which, if committed :in this State would -be a. felony, the district attorney" of 'the p'arish in which sub'sequent cónyietion. wás- -had may file an information accusing the person of a previous conviction." Wliereu’pori the court in which-the subsequent conviction wás had shall - cause the person, * . * * to be brought before it and shall inform him of the allegation contained in the information and of his right to be .tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation- * *• * the'judge shall fix a day to inquire whether the- 'offender lias been' convicted- of a prior felony f-jjg judge' 'finds he has been convicted of a prior feloiiy'' '* * * the court shall sentence him to the punishinent prescribed -in' this Section
 
 *
 
 *
 

 [3]
 

 . “The right of the pcoplé to be; secure in their persons, houses, papers,, and effects, against'unreasonable searches and' seizures, shall not be violated, an úó. Warrants shall issue, but upon pr.obable caqs.e, supported by Oath or affirmation-, and particularly describing the place to be searched, and the persons ;.or things; .to be seized.”
 

 [4]
 

 . “The right of the people to be secure their persons, houses, papers and effects against unreasonable searches .and, seizures, shall not be'violated, and' no sucsearch or seizure shallbe made upon warrant thereof issuéd upon probable cause, supported by oath óf-afñrin’ation, and particularly describing the pla'ce to be searched and the persons or thingsjto be seized.”
 

 [5]
 

 . Code of Criminal Procedure, Article 213,
 

 [6]
 

 . Code of Criminal Procedure, Article 225,
 

 [7]
 

 . Donald Vale was also informed that they held two capiases for his arrest.
 

 [8]
 

 . Following sentence James Vale employed now counsel who represented him on appeal, his appointed counsel having withdrawn as counsel.
 

 [9]
 

 . “The Supreme Court has control of and general supervisory jurisdiction over all inferior courts. * * * In criminal matters, its appellate jurisdiction extends to questions of law only.” Art. VII, Sec. 10, La.Constitution.
 

 [10]
 

 . See footnote 2.
 

 [11]
 

 . Counsel evidently recognized, as lie should have if he read State v. Johnson, 250 La. 473, 196 So.2d 797, the statute has been held constitutional. In that case this court in holding the statute constitutional quoted with approval a recently handed down opinion of the United States Supreme Court in the consolidated cases of Spencer v. State of Texas, Bell v. State of Texas, and Reed v. Beto, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606, wherein the court reasoned, “Such statutes and other enhanced-sentence laws, and procedures designed to implement their underlying policies, have been enacted in all the States, and by the Federal Government as well.”
 

 [12]
 

 . Code of Alabama, Title 14, Section 86 “Any person wlio in the daytime, with intent to steal or to commit a felony, breaks into and enters any inhabited . dwelling house or any other house or building which is occupied by any person lodged therein, of any person who either in the nighttime or daytime, with intent to steal or to commit a felony, breaks into and enters any inhabited’dwelling house * * * or into any shop * * * in which any goods, * * * or other valublé thing is kept for use, sale’of deposit, .provided ’ such structure * * * is specifically constructed or made to keep such..goods, * . * * is guilty of burglary in the. second degree, and shall on eonvictfon be . imprisoned, in the .penitentiary for not less than-one year, nor<morte than ten years.”
 

 [13]
 

 . R..S. 14:62 — “Simple burglary is the unauthorized entering of. any vehicle, water craft, dwelling or other structure, movable or immovable, with the intent to commit any forcible felony or any theft therein, other than as set forth in Article .60. Whoever commits the crime of simple burglary shall be imprisoned, at .hard labor for not more than nine years.” The reporter’s comment headed “Scope” poirtts out, “This section is intended to include all types of entering not classified as aggravated burglary. If any of tb!e essentials of aggravated burglary’is lackin'g, the offender then commits the crime of simple burglary with a lesser maximum- penalty provided.”
 

 R.S. 14:60 provides, “Aggravated burglary is the unauthorized entering of ‘ány inhabited dwelling, or of any ’ structure
 
 *1089
 
 * ® * whore a person is present, with the intent to commit a felony or any theft therein, if the offender, (1) Is armed with a dangerous weapon; or (2) After entering arms himself with a dangerous weapon; or (3) Commits a battery upon any person while in such place, or in entering or leaving such place. Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years.”